ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* WOODS.

Opinion delivered October 31, 1910.

1. CARRIERS—RUNNING TRAIN AT UNUSUAL SPEED.—Ordinarily, it is not negligence *per se* to run a train at an unusual speed in a town, but the question is one of fact for the jury. (Page 314.)

2. INSTRUCTIONS—EFFECT OF CONFLICT.—The giving of a correct instruction will not cure an erroneous one where the two are directly conflicting. (Page 314.)

3. CARRIERS—DUTY TO PASSENGER AT STATION.—The exercise of ordinary care is the measure of the duty of a railroad company toward its passengers while waiting at a station to take a train; the duty of using the highest degree of care being exacted only during the time in which the passenger is on the train or is getting on or off. (Page 315.)

Appeal from Bradley Circuit Court; *Henry W. Wells,* Judge; reversed.

*W. E. Hemingway, E. B. Kinsworthy, E. A. Bolton* and *James H. Stevenson,* for appellant.

Appellee's sixth instruction is both abstract and an incorrect declaration of the law. It is an incorrect declaration of law

in placing the duty upon appellant in the operation of its trains to exercise (1) "the utmost care and foresight," and in making it responsible for the "slightest negligence," without reference to the party invoking the duty, and (2) in holding it to the duty to provide all things necessary to their (the passengers') security, reasonably consistent with their business, and appropriate to the means of conveyance employed by them." In such cases the railroad company is only held to exercise ordinary or reasonable care. 2 Hutchinson on Carr., § § 935, 936, 937, 989, 981; *Id.* § 941; 70 Ark. 136; 3 Thompson on Neg., § 2748; 65 Ark. 255; 257-8; 97 Cal. 114; 104 Mo. 239; 120 Ga. 380; 116 Ga. 743; 77 Ill. App. 66; 96 Ia. 169; 60 Atl. 710; 141 Mass. 31; 62 N. J. L. 7-12; 104 N. E. (Mich.) 390; 77 N. E. 1051; 83 Tex. 309; 106 N. W. 395; 6 Cyc. 608; 5 Am. & Eng. Enc. of Law, 532.

2. If appellee went to the depot with the *bona fide* intention of becoming a passenger (which is not conceded), if that constituted him in any sense a passenger, it did not of itself entail upon appellant that high degree and duty of care and protection which obtains when a passenger is on the train of the carrier. The second instruction given at his request is therefore erroneous.

3. The ninth instruction given at appellee's request errs (1) because it holds appellant liable for the striking of the mule in the event *either the engineer or fireman* could, by keeping a lookout, have discovered it in time to avoid the injury, and (2) it is abstract and misleading. 65 Ark. 619; 64 Ark. 236; 62 Ark. 182.

4. The fifth instruction errs in telling the jury that appellant was liable if, by the exercise of ordinary care it could have avoided striking the mule, etc., had it been operating the train at its usual rate of speed. Elliott on Railroads, § 1160; 66 Ark. 363, 366; 76 Ark. 100.

5. There is no duty resting upon the operatives of a train to stop it on account of the proximity of an animal to the track, unless it is apparent, or, in the exercise of ordinary care, it should be apparent, that the animal will be struck or injured unless the train is stopped. 37 Ark. 393; 69 Ark. 619; 36 Ark. 607; 66 Ark. 248.

*R. W. Wilson, Joe T. Robinson* and *Garland Streett,* for appellee.

1. Whether or not the high rate of speed was negligence under the circumstances of this case, was a question for the jury. 99 S. W. 865-6; 3 Legal Gazette, 102; 64 N. Y. 526; 23 S. W. 596; 85 S. W. 493; 67 S. W. 541; 29 S. W. 232; 68 Ark. 606; 40 Ark. 298; 51 Ark. 459; 57 Ark. 287; 34 Ark. 613; 64 Ark. 237; 97 S. W. 729; 84 Ill. 397.

2. No error in second and sixth instructions given at appellee's request. 51 Ark. 466; 68 Ark. 606; 60 Ark. 550.

3. The sixth instruction does not impose upon appellant the highest *possible* degree of care, but the highest practicable degree of care, commensurate with the possible dangers. 60 Ark. 567.

4. It may be the duty of either or both the engineer and fireman to keep a lookout. 64 Ark. 236.

McCULLOCH, C. J. The plaintiff, Rush Woods, sues the railroad company to recover damages for personal injuries received in a peculiar and somewhat unusual manner, though alleged to be the result of negligence on the part of defendant's servants in the operation of its train. On the night of January 2, 1908, he was standing on the company's platform at Morrell, Arkansas, awaiting the approach of a passenger train on which he expected to embark, when the engine of that train struck a mule, knocking it over against plaintiff and severely injuring him. Negligence of defendant's servants is alleged in running the train at an excessive and unusual rate of speed when approaching the station, and in failing to exercise care to prevent striking the mule after its presence was discovered on the track. There was a trial before a jury, resulting in a verdict in favor of plaintiff.

The train was several hours behind schedule time when it reached Morrell, and evidence was adduced to the effect that when it approached the station the rate of speed was greater than usual, and that it ran nearly 200 feet beyond the customary stopping place. The engine struck the mule. The mule, with others, came out from behind a seed-house or platform near the station. There is a conflict in the evidence as to whether or not the engineer and fireman were prevented,

by reason of the curved track, from seeing the stock ahead near the track in time to slow up the train. Evidence was also adduced to the effect that no stock alarm was sounded, though it was proved beyond dispute that the engine whistled at the proper place for the station.

Morrell is an incorporated town, containing from three hundred to five hundred inhabitants.

The trial court gave, over the objection of defendant, the following among other instructions: "5. If you find from the evidence that the defendant was operating its train at an unusual speed in the town of Morrell, and by reason thereof struck a mule, and if you find that by the exercise of ordinary care defendant could have avoided striking said mule and injuring plaintiff, had it been operating said train at its usual rate of speed, the defendant is liable."

The effect of that instruction was to declare the running of the train at an unusual rate of speed in the town of Morrell to be negligence *per se*, and that the defendant was liable if the injury would not have occurred otherwise. This is not correct, for it should have been submitted to the jury to determine whether or not the running of the train at the unusual rate of speed, under the circumstances, constituted negligence. Judge Elliott correctly states the rule on the subject as follows:

"In the absence of any statute or ordinance on the subject, no rate of speed is negligence *per se*. But, when considered in connection with other circumstances, as it must be in some cases, the court may sometimes be justified in declaring that the company was guilty of negligence in running its train at an excessive and dangerous rate of speed under the circumstances of the particular case. Ordinarily, however, the question is one of fact for the jury." Elliott on Railroads, § 1160.

This is the rule adopted by this court. *Ford* v. *St. Louis, I. M. & S. Ry. Co.,* 66 Ark. 363; *St. Louis, I. M. & S. Ry. Co.* v. *Kimberlain,* 76 Ark. 100.

The court gave another instruction at defendant's request, telling the jury that running the train at an excessive and unusual rate of speed is not negligence *per se,* but this did not cure the error of the former instruction, as the two were directly conflicting.

The giving of the following instruction is also assigned as error: "6.  Railroad companies in operating trains are required to use the utmost care and foresight, and are held responsible for the slightest negligence.  The first and most important duty incumbent upon them is to provide for safety of their passengers.  To this end, they are required to provide all things necessary to their security, reasonably consistent with their business and appropriate to the means of conveyance employed by them, and to exercise the highest degree of practicable care and diligence and skill in the operation of their trains."

The objection to the instruction is that it is abstract in this case, and also that it is an incorrect statement of the law applicable to the case.  The declaration that railroad companies are required to provide all things necessary to the security of passengers, reasonably consistent with their business and appropriate to the means of conveyance employed by them, is abstract, and is inapplicable to the facts of this case, for the reason that the question of failure to provide the things necessary to the security of passengers is not involved in the controversy, and the failure to provide things for their safety had nothing to do with plaintiff's injury.  The jury might have inferred from it that it was the duty of defendant to provide some means of security against the happening of such an occurrence as this.  There is no proof that the platform or waiting room at the station was unsafe, or that the company omitted anything reasonably necessary for the security of passengers.

The instruction is incorrect because it places too high a degree of care upon the company as to passengers waiting at stations.  The exercise of ordinary care is the measure of the duty of a public carrier to protect passengers while at stations.  Hutchinson on Carriers, § 935, 941; 3 Thompson on Negligence, § § 274, 278; *Huddleston* v. *St. Louis, I. M. & S. Ry. Co.,* 90 Ark. 378; *St. Louis, I. M. & S. Ry. Co.* v. *Wilson,* 70 Ark. 136; *St. Louis, I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 255.

The higher degree of care is exacted only during the time in which the passenger has given himself wholly in charge of the carrier, while on the train or getting on or off, for then only is the passenger subjected to the peculiar hazards of that

mode of travel against which the carrier must exercise the highest degree of skill and care. *Falls* v. *San Francisco & N. P. Rd. Co.,* 97 Cal. 114. But when those extraordinary hazards have ceased, or before they have begun, the degree of care is relaxed, as the necessity for it ceases.

The errors in giving the two instructions hereinbefore mentioned were prejudicial, and for this reason the judgment must be reversed, and the cause remanded for a new trial. It is so ordered.