KROGER GROCERY & BAKING COMPANY *v.* KENNEDY.

4-5767 136 S. W. 2d 470

Opinion delivered February 5, 1940.

*Graves & Graves, Owens, Ehrman & McHaney* and *John M. Loftin, Jr.*, for appellant.

*W. S. Atkins* and *E. F. McFaddin,* for appellee.

Holt, J. Appellant brings this appeal from a judgment of the Hempstead circuit court for $3,000 in favor of appellee, Nolin Kennedy, for alleged injuries resulting from a fall on the floor of appellant's grocery store in Hope, Arkansas.

The acts of negligence relied upon in the complaint of appellee were the failure of appellant to furnish him a safe place in which to work, safe tools with which to perform his work, and the failure of Arthur Morris, a fellow-servant, to sweep the floor upon which appellee fell.

Appellant's answer to these allegations was a general denial coupled with the pleas of assumption of risk and the negligence of appellee.

The testimony, as reflected by this record, is to the following effect:

Appellee, Kennedy, at the time of the alleged injury was 22 years of age. He had done extra work in appellant's store in Hope prior to his alleged injury in the store on December 24, 1938. He did not work in the store on December 23rd, the day before the injury, and had not been in the storeroom of appellant on the day before. He was an extra hand. He reported for work at six a. m. on December 24th and was immediately put to work husking onions. "Q. What had you been doing from the time you went to work there that morning up until the time you were injured? A. I had been husking onions. Q. Where? A. In the back of the storeroom, close to the door."

A partition wall separates the front of the store from the rear where produce is kept. It was in this south section of the storeroom that plaintiff (appellee) was injured. This south section was about 20 feet long east and west, and about ten feet wide north and south. At the time appellee was injured it contained many articles. Along the south wall were some shelves, and in front of the shelves were cakes stacked in two-foot boxes. Along the north side of the said south section, there were (beginning at the doorway and extending west) several sacks of onions, then a large sack of English walnuts, and then some sacks of potatoes. Out in front of the English walnuts and extending toward the cake boxes on the south wall, there were some banana crates, which were stacked up higher than the head of a man. There was barely passage room (not over a foot and a half or two feet) between the banana crates on the north and the cake boxes on the south. To get to the potatoes the appellee had to pass through this narrow passage between the banana crates and the cakes. After negotiating this narrow passage there was an open space of three or four feet where the potatoes were. The floor was concrete. There was a light in this south section of the storeroom, but the light was east of the banana crates and the place where the appellee was injured was back west of the banana crates.

The appellee was ordered by Arthur Morris, appellant's employee, to get a sack of potatoes and take the same to the front or sales part of the store; and the appellee went into this south section of the storeroom (where he had not been before that day) and negotiated the narrow passage between the cake boxes and the banana crates to the potatoes. It was dark there—so dark that he couldn't see the floor.

Appellee further testified: "Q. Then how did you take hold of the potatoes—state to the jury just how you sustained your injury? A. Well, I reached down to get the potatoes and I got them by the end and brought them up to this knee (indicating) and got my knee under them and then my hip and I put them on my shoulder, and as I started to turn around—I took a step to turn around

and go up the aisle—and I stepped on something with my right foot and my right foot slipped from under me, and when I did that, it threw all the weight on the muscles of my stomach and something just snapped in there (indicating)."

Dr. Martindale, on behalf of appellee, testified that he examined appellee on the morning of the alleged injury and found him suffering from a hernia or rupture, and on direct examination testified: "Q. If a man gave no history of a previous rupture, state whether or not, in your opinion, he had ever been ruptured before or not, or could you tell? A. I couldn't tell." On cross-examination he testified: "Q. As I understand you, you cannot tell the jury whether or not this was an old or a new hernia? A. I couldn't be positive."

He further testified that a man bending down and picking up a weight could receive a hernia or carrying the weight on his shoulder could cause it. In a traumatic hernia the patient is usually shocked and complains of pain and he may be nauseated and feel weak. A new hernia is sometimes difficult to reduce while an old hernia is readily reduced. Witness found appellee's hernia easy to reduce. In an old hernia there is no ecchymosis; in a new one you may find it. There was none in this case. He found no tear in the fascia; the external ring was large. The fascia is one of the layers that makes up the abdominal wall and gives it support. In a new hernia when the fascia tears you usually get blueness around the ring. You don't get that in an old hernia. In this case he did not notice any blueness.

Witness, Arthur Morris, on behalf of appellant, testified: "Q. Did you sweep out the night before this happened? A. Yes, sir. Q. Did you sweep in that place where he got hurt? A. Yes, sir. Q. That was part of your duties, wasn't it? A. Yes, sir. Q. And you did it? A. Yes, sir." On this point appellee testified: "Q. Who swept out the store? A. Arthur generally swept it out. Q. What time was it swept out in regards opening the store? A. The last thing at night. Q. And you say Arthur Morris swept it out? A. Yes, sir. Q. Did any

other people ever sweep it out? A. If they didn't happen to be doing anything at the time, they would help him.''

On this state of the record appellant urges, first, that the evidence is not sufficient to take the case to the jury. Since it is our view, after a careful consideration of all the testimony, that this contention of appellant must be sustained, it becomes unnecessary to consider assignments of error relating to the instructions.

Appellee in his brief says: ''The negligence charged against the defendant was the failure to exercise ordinary care to provide the plaintiff a reasonably safe place in which to work.''

The master is not an insurer of his servants' safety. The only obligation resting upon appellant in the instant case to appellee, its servant, was to exercise ordinary care to furnish him a reasonably safe place in which to work. This principle is well recognized in this state.

In *Mosley* v. *Raines,* 183 Ark. 569, 37 S. W. 2d 78, this court said: ''The master is not only bound to exercise reasonable care to furnish a safe place to work, but the servant has a right to assume that the master has performed his duty. It is, however, also thoroughly established by the decisions of this court that the master is presumed to have performed his duty, and the servant cannot recover for an injury unless he shows that the master was guilty of negligence and that the negligence of the master caused his injury. The master is liable for the consequences of his negligence, but he is not an insurer of the employee's safety.''

In the instant case appellee does not know what it was that caused him to slip and fall. He says it was some object on the floor, an onion or something. There is no testimony as to how long this object had been on the floor or whether appellant or any of its employees knew of its presence. It is undisputed that the floor upon which appellee fell was swept the night before and that appellee did not work in the store the night before or the day before. He went to work as an extra between six and seven a. m. of the day of his injury and was put to husking onions in the rear of the store at a place but a few feet from the place where he slipped and fell.

In the case of *Missouri Pacific Railroad Company* v. *Martin*, 186 Ark. 1101, 57 S. W. 2d 1047, this court said: "It would be placing too high a duty upon the master to require him to keep the employee's place of work clear of every object upon which an employee might step and slip or fall. They are not insurers, but are only held to the exercise of ordinary care to furnish a safe place to work." This language was approved in *Caddo River Lumber Company* v. *Henderson*, 194 Ark. 724, 109 S. W. 2d 425.

The rule seems to be well settled in cases of this character that a servant cannot recover from slipping on a foreign object or substance without substantial proof of negligence. The servant must show either that the object was negligently left there by an employee or that it remained there a sufficient length of time that the master or his employee knew or should have known of its presence.

It is our view that the well considered case of *Safeway Stores, Inc.,* v. *Mosely,* 192 Ark. 1059, 95 S. W. 2d 1136, where the late Mr. Justice BUTLER wrote the opinion and where the facts are quite similar and are to the same effect as in the instant case, controls here. In that case this court said:

"We think, under the circumstances of this case, it is purely a matter of speculation as to how the lettuce leaf happened to be at the place it was when stepped upon by the appellee, and that the evidence fails to show any negligence on the part of Welter in failing to observe it. The most that can be said is that his duty required him to pick up only those leaves he saw and not to make an inspection for other leaves which might be lying around. We therefore conclude that the evidence, when given its greatest weight, wholly fails to establish any negligent act on the part of Welter as the proximate cause of the fall sustained by the appellee. The question as to the assumption of risk is therefore not necessary to consider as the verdict has no substantial evidence to support it on the question of negligence."

Appellee insists that the two cases upon which he relies, *St. Louis-San Francisco Railway Company* v. *Dan-*

*iels,* 170 Ark. 346, 280 S. W. 354, and *Missouri Pacific Transportation Company* v. *Jones,* 197 Ark. 79, 122 S. W. 2d 613, control here. After a careful review of those cases, we cannot agree with appellee's contention.

It will be observed in these two cases that a passenger was injured by slipping on a banana peel on entering or leaving the conveyance. Under their contract with the company they were both entitled to have the carrier exercise the highest degree of care toward them. It has long been the rule in this state that while one has given himself wholly in charge of the carrier as a passenger on the train or conveyance, or getting on or off, the carrier owes to such passenger the highest degree of care.

In the instant case appellant, it is conceded, owed to appellee the duty of exercising only ordinary care in furnishing him a reasonably safe place in which to work.

This court in *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Woods,* 96 Ark. 311, 131 S. W. 869, 33 L. R. A., N. S., 855, said: "The higher degree of care is exacted only during the time in which the passenger has given himself wholly in charge of the carrier, while on the train or getting on or off, for then only is the passenger subjected to the peculiar hazards of that mode of travel against which the carrier must exercise the highest degree of skill and care. *Falls* v. *San Francisco & N. P. Rd. Co.,* 97 Cal. 114, 34 Pac. 901. But when those extraordinary hazards have ceased, or before they have begun, the degree of care is relaxed as the necessity for it ceases."

Applying the foregoing well-established rules to the instant case, there is no theory upon which the judgment can be sustained. To uphold this judgment would, we think, be equivalent to making appellant an insurer of the safety of its employee, Nolin Kennedy, while performing the work assigned to him, and this is not the law.

On the whole case we conclude, therefore, that the trial court erred in refusing to instruct a verdict in favor of appellant at the conclusion of the testimony, and since the case seems to have been fully developed, the judgment will be reversed, and the cause dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.