KROGER GROCERY & BAKING COMPANY *v.* DEMPSEY.

4-6047                                          143 S. W. 2d 564

Opinion delivered October 14, 1940.

*Owens, Ehrman & McHaney* and *John M. Lofton, Jr.,* for appellant.

*James R. Bush,* for appellee.

Holt, J. Appellee brought suit against appellant to recover damages for physical injuries alleged to have been sustained by her from a fall she suffered while a customer in appellant's grocery store in Prescott, Arkansas. The negligence complained of was that on the 30th day of September, 1939, at or about 8:30 p.m., the plaintiff entered defendant's store to make a purchase; that the defendant, its agents, servants and employees, negligently permitted a banana peel to be and remain upon the floor in said store; that the plaintiff, while in the exercise of ordinary, reasonable care. for her own safety, stepped upon said banana peel, fell and received painful injuries as a result thereof.

The answer was a general denial and a plea of contributory negligence on the part of appellee.

Trial resulted in a verdict and judgment in favor of appellee in the sum of $400.

Appellant contends that there was no substantial evidence to take the case to the jury, and it is our view that this contention must be sustained.

Only two witnesses testified on behalf of appellee. The appellee, Louella Dempsey, and a physician who examined her sometime after her injury. The testimony of the physician goes only to the extent and nature of appellee's injury. He was not present and knew nothing about how the injury occurred.

The testimony of appellee discloses that she is a colored woman 39 years of age and weighs about 200 pounds. On the occasion of the injury she entered appellant's store for the purpose of purchasing merchandise, and fell after stepping upon a banana peel. We quote from her testimony:

"Q. Just tell the jury what happened after you got in the store. A. I went right in and was going to get some things and just as I walked in right between the counter and the wall—middleways, you would say—I stepped on this banana peeling. Of course, I wasn't watching for a banana peeling—I had my mind on what I was going to buy and it happened so quick—I went

down. Q. You stepped on a banana peel? A. Yes, sir. Q. After you fell, did you see the banana peel? A. I was lying on the floor and I was hurting so bad and Mr. Hillis' wife told him a woman had fallen and he picked up the banana peel—Mr. Hillis did hisself. Q. He picked up the banana peel you stepped on? A. Yes, sir, he did. I was on the floor. Mrs. Hillis came to me a good while after that and said, 'Are you hurt?' and I said, 'Yes, I am hurt,' and I got up and stood by the counter a good, long while—by the checking counter—and then I went on out to the front and I stood right out of the door and Mrs. Hillis come and asked me if I wanted her to get something for me and I said, 'No,' and in a few minutes Steve Johnson come by in his taxi and I said, 'I had an accident and I want to get you to carry me home,' and he said, 'My car is down the street,' and he was so long coming back I went on home.''

Appellee further testified in substance that she was able to walk on home after her accident, and that in stepping upon the banana peel she fell upon her back and her feet slipped out in front of her; that she stretched out and "laid out in the store"; that her fall took place between the checking stand and the wall about "middleways"; that there were other people around in the store at the time of her fall, and that there was no one at the exact place she fell except her two girls and her; that a Mrs. Meyers was at the checking counter checking out her groceries when she fell, and that some boys were over in the corner of the store near the place at which she sustained her fall.

Mrs. Meyers, whom appellee saw at the checking counter, testified that she was in the Kroger store at the time that Louella Dempsey fell. She did not see the fall, as Louella fell just behind her; that she heard the noise, looked around , and saw her upon the floor; that she knew the exact spot upon which Louella Dempsey fell. Quoting from her testimony: "Q. You state that you saw her on the floor where she fell. I will ask you if you had, immediately prior to that time, walked over that same spot or place where she had fallen in the store? A. Yes, sir. Q. How long before would you say? A. I

wouldn't think it was any more than a minute or so. Q. A minute or so? A. Yes, sir. Q. In passing over that particular place, did you, Mrs. Meyers, see a banana peel or foreign object on the floor? A. No, sir. Q. You didn't step on anything or fall on anything? A. No, sir. Q. Whether or not it dropped after you passed over that place, you don't know? A. No, sir.''

Mr. Hillis, manager of appellant's store, testified in substance that on Saturdays the store is usually swept from five to seven times a day, and that they always watch the store for articles falling on the floor, because he knew that foreign objects such as banana peels were dangerous, and instructed his employees to keep the floor clean, and that he did everything possible to maintain his store in a clean and safe condition, and that on September 30, 1939, he had kept his store clean, and had exercised every precaution within his knowledge to make the store clean and safe for the customers. On cross-examination Hillis testified that the reason for sweeping the store many times a day was because they handled green and fresh vegetables and that that stuff got upon the floor and it was necessary to sweep it regularly; that he swept it because people did drop things upon the floor, and that he knew that banana peels and things of that sort were dangerous; that a banana peel had to stay on the floor just long enough for somebody to step on it to be dangerous.

It must be conceded under the testimony that appellee stepped on a banana peel and fell. We think, however, after a review of the testimony, that there is an absence of any evidence as to how the banana peel came to be upon the floor or how long it remained there prior to appellee's fall.

It seems to be uniformly held in cases of this character that where a customer falls as a result of slipping upon some foreign object or substance, and there is no substantial proof showing that the store owner knew of its presence, or in the exercise of ordinary care should have know of its presence, there can be no recovery. In other words, it is necessary to show by substantial testi-

mony the length of time the object had been on the floor or that it got there through the negligence of the defendant or its employees. Negligence is never presumed, but must be proved by the party alleging it.

In the instant case the only proof of negligence on the part of appellant, offered by appellee, as we read the testimony, is the occurrence of the injury. This is not sufficient. Appellant was not an insurer of appellee's safety while in its store.

There is no difference in the liability of a storekeeper to a customer on the one hand and an employee on the other. In either case the rule is well settled that the store owner is required to exercise only ordinary care to keep his place of business in a reasonably safe condition.

This court in *Davis* v. *Safeway Stores, Inc.,* 195 Ark. 23, 110 S. W. 2d 695, a case involving injury to a customer, said: "It must be remembered that appellant was an invitee in appellee's premises. It owed a duty to the public, including appellant, no matter what her overweight might be, to exercise ordinary care to keep its premises in a reasonably safe condition for the safety of all persons who might come into said store on business."

In *Kroger Grocery & Baking Co.* v. *Kennedy,* 199 Ark. 914, 136 S. W. 2d 470, this court said: "It would be placing too high a duty upon the master to require him to keep the employee's place of work clear of every object upon which an employee might step and slip or fall. They are not insurers, but are only held to the exercise of ordinary care to furnish a safe place to work. This language was approved in *Caddo River Lumber Company* v. *Henderson,* 194 Ark. 724, 109 S. W. 2d 425.

"The rule seems to be well settled in cases of this character that a servant cannot recover from [for] slipping on a foreign object or substance without substantial proof of negligence. The servant must either show that the object was negligently left there by an employee or that it remained there a sufficient length of time that the

master or his employee knew or should have known of its presence."

And in another recent case, *Safeway Stores, Inc.,* v. *Mosely,* 192 Ark. 1059, 95 S. W. 2d 1136, which involved an injured employee, this court said: "We think, under the circumstances of this case, it is purely a matter of speculation as to how the lettuce leaf happened to be at the place it was when stepped upon by the appellee, and that the evidence fails to show any negligence on the part of Welter in failing to observe it. The most that can be said is that his duty required him to pick up only those leaves he saw and not to make an inspection for other leaves that might be lying around. We, therefore, conclude that the evidence, when given its greatest weight, wholly fails to establish any negligent act on the part of Welter as the proximate cause of the fall sustained by the appellee. The question as to the assumption of risk is therefore not necessary to consider as the verdict has no substantial evidence to support it on the question of negligence."

The above language was approved by this court in *Kroger Grocery & Baking Company* v. *Kennedy; supra.*

We think the rule laid down in these cases controls here.

Appellee cites and relies upon two railway cases, *St. Louis-San Francisco Railway Co.* v. *Daniels,* 170 Ark. 346, 280 S. W. 2d 354, and the case of *Missouri Pacific Transportation Company* v. *Jones,* 197 Ark. 79, 122 S. W. 2d 613. We think, however, that these cases do not apply here and were clearly distinguished by this court in the Kennedy case, *supra,* wherein it was stated that "a carrier owes a passenger the highest degree of care."

For the error indicated the judgment is reversed, and, since the cause seems to have been fully developed, it will be dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent as to dismissal.