MENSER *v.* THE GOODYEAR TIRE & RUBBER COMPANY.

4-9707                                               247 S. W. 2d 1019

Opinion delivered April 7, 1952.

Rehearing denied May 5, 1952.

*Hebert & Dobbs,* for appellant.

*Wootton, Land & Matthews,* for appellee.

WARD, J.   On March 9, 1949, at the noon hour, appellant went into appellee's place of business at Hot Springs for the purpose of making a payment on her account, when she slipped, as alleged, on some substance on the floor, fell, and was injured.   After the introduction of her testimony and that of her doctor, plaintiff rested her case and the trial judge instructed a verdict for the defendant, appellee here.

The question on this appeal is the propriety of the action of the trial judge, and this depends on whether plaintiff's testimony made a *prima facie* case of negligence against appellee.

In order to answer the above question it is, of course, necessary to examine carefully appellant's testimony, and for that reason and purpose we quote the material parts as set out below:

"I went in and I walked, I'll say two-thirds of the way through the building, and the clerk came out of the office and asked me what I wanted, and I said, 'I just want to go to the office and pay a bill.' So he just walked right up to me, and he turned around to go back, and about that time I slipped down, you see, so I sat there a minute . . . my foot just slipped forward and I kinda slipped back . . . I just sat back . . . I sat there until I got to feeling a little better and he got me a chair then and brought it around and so I sat down in that a few minutes . . . And I could see then—I got to feeling better and I could see—on the floor, looked like they had took a big wad of cloth or something and there had been something took up off the floor or put on and I didn't know which it was supposed to be, but they just come around, you know circular movements, thick streaks and thin streaks of it, and where I slipped through it—

"Q. Do I understand you to say that there was one spot that was in streaks?

"A. Yes, sir.

"Q. Different than the balance of the floor?

"A. Well, I don't know how far it went. I just noticed just a great big place around where I was sitting. I was suffering too bad, I never paid no attention nowheres else but I did look to see where I fell.

"Q. Well, could you describe to the jury, as near as you can, how the substance appeared to you to be? What it appeared to you to be?

"A. Well, it appeared to be—just to tell you the truth—like it was floor wax. In other words, I've waxed floors myself, used to take a big wad you know and daub it down, you know, just smear through it—why it just leaves a thick pasty look on the floor and that's really what it looked like, while I wouldn't say what it was because I don't know. But just like you'd come around, just this way (witness indicates a circular movement), and there was thick and thin places in it.

"Q. In other words, it hadn't been spread out smoothly?

"A. No, it sure hadn't. . . .

"Q. Now, you say you can't estimate the size of that?

"A. No, but I know it was a place that big.

"Q. Would that be approximately two and a half or three feet?

"A. Something similar.

"Q. And I believe you stated that you couldn't tell what it was?

"A. No, sir, I wouldn't say what it was."

While it is apparent that the above recital is somewhat disconnected and evidences a lack of ability on the part of appellant to give a clear and concise account of just what happened and all the attending facts and circumstances, nevertheless it is sufficient to convey the following information: Appellant entered appellee's store to pay a bill; while attempting to do so she slipped on *something* and was caused to fall; the *something* was a spot on the floor about two or three feet in diameter, it looked like floor wax although she could not say positively; and, whatever it was it was in thick and thin streaks, and it appeared as though some one had taken a wad of cloth and tried to take something up off the floor or put or smear something on the floor.

In our opinion the above factual situation was sufficient to raise a question of negligence on the part of appellee. The incident occurred in the middle of the day and if the "spot" was the result of having waxed the floors, sufficient time had elapsed for properly finishing the job, and the extent and nature of the "spot" was such and the character of the place of business was such that it would not be reasonable to assume that some customer had inadvertently [and just recently] dropped it on the floor. In these respects at least this case is distinguished from *Safeway Stores* v. *Mosley,* 192 Ark.

1059, 95 S. W. 2d 1136, where a customer stepped on a lettuce leaf in a grocery store; *Kroger Grocery & Baking Co.* v. *Kennedy,* 199 Ark. 914, 136 S. W. 2d 470, where an employee slipped on "something" while trying to lift a sack of potatoes; and *Kroger Grocery & Baking Co.* v. *Dempsey,* 201 Ark. 71, 143 S. W. 2d 564, where a customer slipped on a banana peel in a grocery store and where the evidence showed the store was swept five or six times a day.

There are numerous cases from other jurisdictions dealing with oily or greasy spots on the floor, with factual situations similar to those obtaining here, which hold that a jury question is presented, such as: *Williamson* v. *Hardy,* 47 Cal. App. 377, 190 P. 646; *Ward* v. *Avery,* 113 Conn. 394, 155 A. 502; *Haverty Furniture Co.* v. *Jewell,* 38 Ga. App. 395, 144 S. E. 46; and *Bury* v. *F. W. Woolworth Co.,* 129 Kan. 514, 283 P. 917.

It is our opinion that it was error for the lower court to instruct a verdict in favor of appellee and for that reason the cause is reversed and remanded.

Mr. Justice McFADDIN dissents.

ED. F. McFADDIN, Justice (Dissenting). The majority opinion details Mrs. Menser's testimony, and then says:

"In our opinion the above factual situation was sufficient to raise a question of negligence on the part of appellee. The incident occurred in the middle of the day and if the 'spot' was the result of having waxed the floors, sufficient time had elapsed for properly finishing the job, and the extent and nature of the 'spot' was such and the character of the place of business was such *that it would not be reasonable to assume that some customer had inadvertently (and just recently) dropped it on the floor.*" (Italics my own).

I maintain that this case should be judged by the evidence and not by the majority's views as to what "would not be reasonable to assume." The evidence shows that Mrs. Menser slipped on some foreign substance that *might* have been floor wax. There is no evi-

dence as to who put the substance on the floor, or how long it had been there. For all that this record shows, some immediately previous patron might have dropped some liquid out of a bottle and scuffed it with his feet.

We have several cases in which we have discussed the evidence that must be offered by the plaintiff to make a jury case against a storekeeper in a situation like the one at bar. Some of our more recent cases, which cite and discuss our earlier cases, are *Safeway Stores* v. *Moseley,* 192 Ark. 1059, 95 S. W. 2d 1136; *Kroger Grocery* v. *Kennedy,* 199 Ark. 914, 136 S. W. 2d 470; and *Kroger Grocery* v. *Dempsey,* 201 Ark. 71, 143 S. W. 2d 564. In addition to our own cases, those from other jurisdictions are reviewed and discussed in a series of Annotations in American Law Reports, entitled: ''Duty and Liability Respecting Condition of Store or Shop.'' These Annotations may be found in 33 A. L. R. 181, 43 A. L. R. 866, 46 A. L. R. 1111, 58 A. L. R. 136, 100 A. L. R. 710, and 162 A. L. R. 949.

The rationale of our holdings is, that a plaintiff who falls because of some foreign substance on the floor of the store must,—in order to make a case of actionable negligence against the storekeeper—offer evidence that the foreign substance was (a) either placed on the floor by the storekeeper, or (b) had been on the floor a sufficient length of time so that the storekeeper knew, or should have known, of its presence. Such summarization of the rule was quoted with approval in *Kroger* v. *Dempsey, supra.* In the case at bar, the plaintiff offered no such evidence, but left it entirely for speculation as to whether the defendant had been guilty of negligence; and verdicts cannot be based on speculation. See *Glidewell* v. *Arkhola,* 212 Ark. 838, 208 S. W. 2d 4, and cases there cited.

The facts in the case at bar are materially different from those in *Davis* v. *Safeway Stores,* 195 Ark. 23, 110 S. W. 2d 695. In that case, the manager of the store admitted that the floor had been oiled by the company the night before Mrs. Davis fell; and the question was whether the putting of the oil on the floor rendered it

unsafe. In the case at bar, there is absolutely no evidence that the storekeeper put anything on the floor; nor is there any evidence that the substance which the plaintiff said caused her to slip had been on the floor for a sufficient length of time for the storekeeper to be charged with negligence in failing to have discovered it.

I therefore conclude that the trial court was correct in instructing a verdict in favor of the defendant, so I respectfully dissent from the majority holding.