Minnie C. PEARSON, Plaintiff,

v.

UNITED STATES of America, Defendant,

Carl Postlewate, d/b/a National Park Window Cleaners, Third-Party Defendant,

Irene Gartenberg, Pearl Lippert and Sam Gartenberg, Third-Party Defendants.

Civ. A. 774.

United States District Court
W. D. Arkansas,
Hot Springs Division.

Nov. 9, 1959.

Michael B. Heindl, Hot Springs, Ark., for plaintiff.

Chas W. Atkinson, U. S. Atty., Ft. Smith, Ark., for the United States.

Wood, Chesnutt & Smith, Hot Springs, Ark., for Carl Postlewate.

Wootton, Land & Matthews, Hot Springs, Ark., for Pearl Lippert, Sam Gartenberg and Irene Gartenberg.

JOHN E. MILLER, Chief Judge.

The plaintiff, Minnie C. Pearson, is a citizen of the State of Arkansas and resides in the City of Hot Springs in the Western District. On March 26, 1959, she filed her complaint against the United States of America in which she alleged that on October 8, 1958, she entered the Social Security Office of the defendant at 314 Market Street, Hot Springs, Arkansas, for the purpose of obtaining official information concerning a notice she had received in the envelope with her last Social Security check. Upon entering the office, she sat in a chair at the invitation of the receptionist and interviewer, which was placed immediately adjacent to and facing the main entrance aisle of the office, and there conversed with the receptionist and interviewer concerning the question which prompted her to enter the office; that upon completion of the interview and while using due care and caution, she arose from the said chair and took a step forward and into the main aisle, and was in the process of taking another step forward and to the right toward the door when her left foot slipped, causing her to fall to the floor upon her left hip and lateral left thigh and causing her to suffer an impacted fracture at the head and neck of the left femur.

The plaintiff further alleged:

"7. That defendant's agents, servants and employees were, at said time and place, negligent in that

they knew, or in the exercise of reasonable care should have known that the surface of the floor at the said point of falling was sloping and uneven and constituted an inherent and latent danger to plaintiff and persons similarly situated and against which plaintiff had no warning or notice; that the negligence of defendant's agents, servants and employees, as aforesaid, was a direct and proximate cause of the injuries suffered by the plaintiff, as aforesaid.

"8. That the defendant's agents, servants and employees were, at said time and place, negligent in that they caused to be placed on the surface of the floor at the said point of falling an unreasonable and abnormal amount of wax for the conditions and circumstances therein existing; that the negligence of defendant's agents, servants and employees, as aforesaid, was a direct and proximate cause of the injuries suffered by the plaintiff, as aforesaid.

"9. That the defendant's agents, servants and employees were, at said time and place, negligent in that they failed to use ordinary care to keep in a reasonably safe condition the portion of the premises, as aforesaid, which they could expect to be used by and which was used by the plaintiff and persons similarly situated; that the negligence of defendant's agents, servants and employees, as aforesaid, was a direct and proximate cause of the injuries suffered by the plaintiff, as aforesaid."

Then follows the allegations as to the injuries received, the suffering therefrom, and the hospital and medical expenses incurred by reason of such injuries.

On May 26, 1959, the Government filed its answer in which it admitted: (1) the jurisdictional basis of the suit, (2) the fact that the plaintiff had entered the Social Security Office on October 8, 1958, and (3) that she had sustained a fall as she was leaving the office.

The defendant further alleged that the injuries complained of by plaintiff were the result of an accident; that the plaintiff without due regard for her own safety failed to keep a proper lookout, and that the fall was occasioned by reason of her failure to exercise ordinary care for her own safety.

On August 10, 1959, the defendant, upon leave of the court, filed a third-party complaint against the third-party defendant, Carl Postlewate, d/b/a National Park Window Cleaners, in which the defendant alleged:

"4. By Agreement effective July 1, 1957, the third party defendant, Carl Postlewate, dba National Park Window Cleaners, contracted with the United States of America to perform the janitorial service for the Social Security Office located in the building at 314 Market Street, Hot Springs, Arkansas, and included in said contract the following provisions:

" '4. Responsibility For Employees And Plant. The contractor shall be responsible for the safety of his employees, plant and material, and for any injury or damage done to or by them. He shall protect the United States from all claims for damages to any and all persons and/or property resulting from the execution of this contract. The contractor shall make good at his own expense all damage to Government property resulting from his operations under these specifications, or resulting from the fault or negligence of any of his employees. While in the public buildings covered by this contract, in connection with the performance of the contract, employees of the contractor shall be subject to the same regulations as those governing employees of the Public Buildings Service.'

"5. Pursuant to said provision, the third party defendant, Carl Postlewate, dba National Park Window Cleaners, would be liable to the United States of America for any recovery of the plaintiff resulting from the execution of this contract."

The third-party defendant, Carl Postlewate, on September 9, 1959, filed his answer to the third-party complaint in which he admitted the execution of the contract as alleged in the third-party complaint, but denied that he would be liable to the defendant for any recovery by plaintiff. He further alleged:

"3. In further answering, the Third Party Defendant denies that the injuries complained of, by the Plaintiff, if any, were caused by any negligence on the part of the Third Party Defendant or his employees.

"4. The Third Party Defendant denies that the injuries or damages to the Plaintiff, if any, resulted from the execution of the contract between the Defendant and Third Party Plaintiff, and the Third Party Defendant.

"5. The Third Party Defendant adopts the allegations of paragraphs 6, 7 and 8 of the Defendant's Answer and alleges that the injuries complained of by the Plaintiff were the result of an accident and were caused by the Plaintiff's failure to keep a proper lookout for her own safety and were a result of the contributory negligence of the Plaintiff."

The building occupied by the Social Security Office was leased by the Government on May 4, 1955, from the owners, Leo Gartenberg and Mrs. Peter Gartenberg. The lease was for a period of five years from July 1, 1955, to June 30, 1960. Prior to October 8, 1958, the date of the plaintiff's fall, both Leo Gartenberg and Mrs. Peter Gartenberg died. On October 8, 1958, the building was owned subject to the Government's lease by Irene Gartenberg, Pearl Gartenberg Lippert, and Sam Gartenberg. The Government accordingly obtained a leave of the court to file a third-party complaint against the three owners. The lease was included in the third-party complaint, and it provided, inter alia:

" '9. The Lessor shall, unless herein specified to the contrary, maintain the said premises in good repair and tenantable condition during the continuance of this lease, except in case of damage arising from the act or the negligence of the Government's agents or employees. For the purpose of so maintaining the premises, the Lessor reserves the right at reasonable times to enter and inspect the premises and to make any necessary repairs thereto.

" '22. Subsequent to occupancy, the Government will supply its own janitor service and supplies, water, gas, electricity, toilet and lavatory supplies, replacement light bulbs and tubes, ballasts, and starters, and will service and operate the premises. The Lessor shall during the life of this lease or any renewal thereof be responsible for the maintenance of the structure and installed fixtures and equipment, and will keep them in good repair and operating condition.' "

The third-party plaintiff further alleged that, pursuant to the provisions of the lease, in the event the court finds that the plaintiff was injured due to faulty construction or faulty maintenance of the building, the defendant, United States of America, will be entitled to recover from the said third-party defendants any amount awarded to the plaintiff.

In due time the owners, third-party defendants, filed an answer to the third-party complaint in which they alleged that the United States of America had occupied the premises for more than three years prior to the date of the alleged accident and "no request was made of this (third party) defendant for maintenance relating to the condition which allegedly caused the accident, and that

the United States of America is estopped to assert any lack of maintenance as a grounds for relief."

Upon the issues presented by the pleadings, the case proceeded to trial to the court, without a jury, on October 29, 1959. The attorneys for the respective parties waived oral argument, and the case was submitted and now the court files this opinion and incorporates herein the findings of fact and conclusions of law as authorized by Rule 52(a), F.R.Civ.P., 28 U.S.C.A.

Before discussing in detail the testimony, the court feels that it should set forth the principles of law that govern the disposition of the issues formed by the pleadings and to which the testimony was directed.

Title 28 U.S.C.A. § 1346(b), provides:

"Subject to the provisions of chapter 171 of this title, the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Chapter 171, Title 28, 28 U.S.C.A. § 2674, provides in part:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

Thus, the question of liability of the defendant and the liability over the third-party defendants is required to be determined by the law of the State of Arkansas.

The complaint of the plaintiff contains three specific allegations of negligence on the part of the defendant: (1) that the employees of the defendant in charge of the office on October 8, 1958, were negligent in that they knew, or by the exercise of reasonable care should have known, that the surface of the floor at the place where plaintiff fell was sloping and uneven, and constituted an inherent and latent danger to the plaintiff and persons entering the building; (2) that the said employees were negligent in that they caused to be placed on the surface of the floor at the place where plaintiff fell an unreasonable and abnormal amount of wax for the conditions and circumstances therein existing; and (3) that the employees in charge of the office failed to use ordinary care to keep in a reasonably safe condition the portion of the premises which they could expect to be used by persons entering the building and which was used by the plaintiff, and that such wrongful acts and omissions of negligence were a direct and proximate cause of the injuries suffered by the plaintiff.

The defendant and third-party defendants have alleged that the plaintiff failed to use ordinary care for her own safety and, therefore, plead contributory negligence as a bar to her claim for damages.

As heretofore stated, the injury was received on October 8, 1958. At that time Act 296 of the Acts of the General Assembly of Arkansas for the year 1957 was and still is in effect. Section 1 of the Act, Ark.Stats.Ann., Sec. 27–1730.1 (Supp.1957), provides:

"Contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of less degree than the negligence of any person, firm, or corporation causing such damage."

Section 2 of the Act, Ark.Stats.Ann., Sec. 27–1730.2 (Supp.1957), provides that where the negligence of the injured person is of a less degree than the negligence of the person, firm or corpora-

tion causing such damages that the amount of the recovery shall be diminished in proportion to such contributory negligence.

Most of the Arkansas Supreme Court decisions concerning "slipping" cases were rendered prior to March 27, 1957, and the effective date of Act 296. Therefore, the cases are generally controlled by the prior law under which the slightest contributory negligence on the part of the injured person constituted a complete defense.

The plaintiff was an invitee in the defendant's office at the time she received the injuries. She was at that time 65 years old and weighed 178 pounds. In 1936, as the result of an automobile collision, her lower right extremity was broken above the knee, and at that time the extremity was 1½ inches shorter than her lower left extremity. In addition to being shorter, it was bowed twenty percent forward and laterally.

It should be remembered that the office was an office maintained by the defendant where it could reasonably be expected that the aged, the lame, infirm, ill and disabled persons would enter.

In Davis v. Safeway Stores, Inc., 195 Ark. 23, 110 S.W.2d 695, the court, beginning at the bottom of page 25 of 195 Ark., at page 696 of 110 S.W.2d, said:

"It must be remembered that appellant was an invitee in appellee's premises. It owed a duty to the public, including appellant, no matter what her overweight might be, to exercise ordinary care to keep its premises in a reasonably safe condition for the safety of all persons who might come into said store on business. Appellee holds itself out as being willing to do business with all of the public, whether they be underweight, ordinary weight, or overweight, large or small, and it will be liable in damages to any such persons, who, while in the exercise of ordinary care for their own safety, are injured through its negligence. Since it invited the general public into its place of business, the law requires it to exercise ordinary care to keep such place reasonably safe for all persons whom it invited."

The grounds of negligence alleged in Davis v. Safeway Stores, Inc., supra, were that the defendant (appellee) had failed to exercise ordinary care to maintain its premises in a reasonably safe condition and in applying a surplus amount of oil upon the floor of the store without notifying the customers of the dangerous condition, and also by failing to sufficiently light the store.

In Menser v. Goodyear Tire & Rubber Co., 220 Ark. 315, 247 S.W.2d 1019, the plaintiff alleged that she went into the defendant's place of business at Hot Springs, Arkansas, for the purpose of making a payment on her account and slipped on some substance on the floor, fell and was injured. At page 317 of 220 Ark., at page 1020 of 247 S.W.2d, the court said:

"Appellant entered appellee's store to pay a bill; while attempting to do so she slipped on *something* and was caused to fall; the *something* was a spot on the floor about two or three feet in diameter, it looked like floor wax although she could not say positively; and, whatever it was it was in thick and thin streaks, and it appeared as though some one had taken a wad of cloth and tried to take something up off the floor or put or smear something on the floor."

The court held that the testimony tending to establish the facts as above stated was sufficient to raise a question of negligence on the part of the defendant. The fall occurred in the middle of the day, and the court, in discussing the testimony, said "if the 'spot' was the result of having waxed the floors, sufficient time had elapsed for properly finishing the job, and the extent and nature of the 'spot' was such and the character of the place of business was such that it would not be reasonable to assume that

some customer had inadvertently [and just recently] dropped it on the floor."

The court also referred to other cases where persons, upon entering a store or office, had slipped on "something" and to the rule which requires that the testimony show that the foreign object had been on the floor a sufficient period of time to enable the proprietor, by the exercise of ordinary care, to have discovered and removed such object.

In Deason v. Boston Store Dry Goods Co., 226 Ark. 667, 292 S.W.2d 261, 61 A.L.R.2d 170, the court, at page 669 of 226 Ark., at page 263 of 292 S.W.2d, stated the rule relative to foreign objects being on the floor as follows:

"It seems to be uniformly held in cases of this character that where a customer falls as a result of slipping upon some foreign object or substance, and there is no substantial proof showing that the store owner knew of its presence, or in the exercise of ordinary care should have known of its presence, there can be no recovery. In other words, it is necessary to show by substantial testimony the length of time the object had been on the floor or that it got there through the negligence of the defendant or its employees. Negligence is never presumed, but must be proved by the party alleging it." Citing cases.

In Hurley v. Gus Blass Company, 191 Ark. 917, 88 S.W.2d 850, the plaintiff sought to recover for a fall she sustained as a result of an alleged defective floor in front of the elevators in the defendant's department store. The specific allegation as to the condition of the floor and the manner in which it caused her to fall was as follows:

" 'Said floor, at the time plaintiff fell and received her injuries, was sloping in places. Some of the floor boards were cracked and there were raised joints in the floor, the ends of some of the boards being raised higher than the boards adjoining them. Because of said defects, the sole and heel of plaintiff's shoe caught upon the floor, and she was thereby violently thrown and caused to fall, which fall resulted in her injuries.' " 191 Ark. 918, 88 S.W.2d 850.

A reading of the opinion and its construction in accordance with the provisions of the existing contributory negligence statute heretofore referred to discloses that the court held that it could not be presumed that the defendant was guilty of negligence simply because the plaintiff sustained a fall and injury in the defendant's store, but that the burden of proof was upon the plaintiff to show by a preponderance of the evidence that her fall was occasioned through a defective condition of the floor of defendant's store.

In the instant case it was incumbent upon the plaintiff to prove the allegations of negligence complained of in her complaint.

The court has discussed the decisions dealing with those cases where the plaintiff claimed to have fallen because of the presence of an excessive amount of wax or a foreign object on the floor.

In reference to the allegation that the plaintiff fell because "the surface of the floor at the said point of falling was sloping and uneven and constituted an inherent and latent danger to plaintiff and persons similarly situated," the plaintiff was required to prove by a preponderance of the evidence that a proximate cause of her falling was the sloping and uneven condition of the floor and that the defendant, by the exercise of ordinary care, knew or should have known that such sloping and uneven condition might reasonably be expected to cause the plaintiff or some other person to fall. In Kroger Grocery & Baking Company v. Dempsey, 201 Ark. 71, 143 S.W.2d 564, the court held that the occurrence of the injury is not sufficient to fasten liability upon the owner of the store or office. Beginning at the top of page 75 of 201 Ark., at page 566 of 143 S.W.2d, the court said:

"Negligence is never presumed but must be proved by the party alleging it.

"In the instant case the only proof of negligence on the part of appellant, offered by appellee, as we read the testimony, is the occurrence of the injury. This is not sufficient. Appellant was not an insurer of appellee's safety while in its store."

With these principles of law in mind, the court must determine whether the testimony is sufficient to establish negligence on the part of the defendant, and that such negligence was a proximate cause of the injury received by plaintiff.

At the beginning of the trial, the defendant and plaintiff joined in a request that the Judge view the premises, and during the noon recess the Judge, accompanied by his Law Clerk, visited the office where the fall occurred, not for the purpose of becoming a witness or to obtain any facts not shown by the testimony, but better to enable the Judge to evaluate the testimony of the witnesses as was given at the trial.

The testimony does not disclose when or for what purpose the building was erected, but from October 1947 to January 1955 a family-style cafe was operated in the space occupied by the Social Security Office. The entrance to the building was from Market Street through a door placed approximately in the center of the building as it faced the street. The testimony did not disclose that any structural changes were made in the building after the cafe was closed and prior to its occupancy by the Social Security Office during the last week in June of 1955. The floor was covered with asphalt tile squares. There is no testimony to show when the floor was covered with tile, but in 1958, prior to the time the plaintiff fell, Mr. Adolph Elser, d/b/a Floor Covering Company, was employed by the owner to make some repairs on the floor covering. At that time squares of tile were concave, and

it was necessary to remove some of them. The repair work was done only on a narrow concrete strip 18 or 27 inches wide immediately adjacent to the front wall of the building. In other words, there were no repairs on the wood floor or covering tile squares extending from 18 or 27 inches from the door in the aisle or passageway used by persons who had occasion to visit the office. From the testimony of Mr. Elser and others the court is convinced that the floor boards upon which the tile had been placed were concave and small ridges existed where the boards joined. The ridges and depressions existed in 1958, and they existed at the time of the trial.

The District Manager of the Social Security Office stated that the floor was cupped and that there was at least one slight depression, but that he did not notice it prior to October 8, 1958, when the plaintiff fell.

The plaintiff testified that, after she had fallen, she noticed a ridge in the floor, and at the same time she said that she noticed a sparkle on the floor in the area where she fell and that she fell about six or seven squares from the door.

A dividing rail or counter extended across the office from both side walls about nine feet distant from the entrance door. A person entering the office, if he desired to confer with the Manager or other employees whose desks were back of the rail or counter, would enter a gate which was slightly to the right of a straight line from the door and, of course, pass back into the rear of the office where most of the desks were situated. However, the desk of the receptionist was situated immediately to the left of the gate, and the desk formed a part of the dividing rail or counter. When the plaintiff entered the building, she proceeded slightly to the left to the desk of the receptionist, who was facing towards the door. Upon her arrival at the desk, she sat in a chair that had been placed on the outside of the rail in what might be termed the lobby. The chair was so placed that her left side was next

to the front of the desk, and immediately across from her the receptionist sat. When she had finished the interview, she was facing the unobstructed passageway leading from the door to the gate. In order to depart, a person seated as was the plaintiff would upon arising turn slightly to the right, and then make her way a distance of approximately eight feet to the doorway. At the time the plaintiff arose from her chair, she naturally stepped forward with her right foot, and in making the slight right-hand turn, her left foot slipped on the floor and she fell on her left side. As a result of the fall she suffered an impacted fracture of the head and neck of the left femur. At the trial the plaintiff testified that she had taken three or four steps and was in the process of lifting her right foot when her left foot slipped and she fell, but in answer to an interrogatory propounded prior to the trial, she stated that she had taken one or two fairly short steps slightly forward and to her right toward the main door when she fell. It does not appear to be material whether she had taken one or two steps or three or four steps, because the court is convinced from other testimony that she fell at a place on the floor where there was a depression and ridge or possibly ridges.

The employees of the Social Security Office exhibited the very minimum of interest in the plaintiff after her fall. In fact, she was raised from the floor by two farmers who were sitting in the lobby or waiting space of the building near where she fell. One of the farmers fixed the place of her fall at about halfway between the desk and the door. The other one said she was about three feet from the desk when she fell. The court believes and finds that she had moved at least three or four feet from the desk on her way to the door when she fell, and the court is convinced that the fall was proximately caused by the depression and ridges in the tile.

The plaintiff testified that she was wearing a certain kind of shoes which she exhibited in court. The shoes appeared to be of the wedge-heel type, but two of the employees of the Social Security Office said that she was wearing walking shoes, but there is no contention that her shoes were not appropriate, and if she was in fact wearing walking shoes, the heel would have been broader than the shoes that the plaintiff contends she was wearing. In any event, the fall was not occasioned by the type of shoes that the plaintiff was wearing; it was caused by the foot turning or slipping on the ridge or in the depression that was present in the floor and in the tile covering.

The plaintiff was removed from the office to the Ouachita General Hospital where she remained from October 8 to December 2, 1958. Thereafter, she returned home but was required to spend most of her time in bed. She was in traction a great deal of the time while she was in the hospital. As heretofore stated, plaintiff had suffered an injury in 1936, and her right lower extremity was approximately an inch and a half shorter than the lower left extremity. She walked with a limp, and that limp is accentuated now as a result of the fall. The plaintiff also complained of phlebitis, but the court believes that the only injuries shown by the testimony to a reasonable certainty suffered by plaintiff because of the fall were those to her left lower extremity, as hereinbefore stated. However, she did suffer much pain, and the disability is permanent though partial. She lost no time, and the court feels that a reasonable compensation for the injuries directly suffered as a result of the fall, including past and future pain, suffering, and mental anguish, would be $3,000, plus $1,226.85 medical and hospital expenses.

The fall of the plaintiff was not caused by the presence of an excessive amount of wax or any other foreign object on the floor. The testimony disclosed that the third-party defendant, Carl Postlewate, performed the janitorial services in a proper manner; that he was not

negligent, and the plaintiff cannot recover on her plea of negligence in that there was an excessive amount of wax on the floor, but her fall and consequent injuries were proximately caused by the negligence of the defendant in failing to maintain the floor and the covering thereof in a reasonably safe condition. The defendant should have known by the exercise of ordinary care that the plaintiff, or any other person in her physical condition might fall by coming in contact with the depression and ridge or ridges on the floor in the area where persons, such as the plaintiff, would be required to go for the purpose of interviewing the receptionist.

The District Manager of the office testified that there was "cupping" in the floor, and that there was a slight depression in the floor over which plaintiff passed in going to the desk of the receptionist. However, he testified that he did not notice the condition of the floor prior to the fall of the plaintiff. None of the owners or the Manager testified about the repairs that were made on the floor covering in 1958, and did not deny that the condition existed, as was testified to by Mr. Elser and by Mrs. Meril Sammon, who had operated the cafe in the building from October 1947 to January 1955.

██ This brings the court to a consideration of whether the plaintiff was guilty of contributory negligence. The court does not think that she was guilty of contributory negligence. She had a right to assume that the floor was in reasonably good condition, and there is no testimony from which the court might find that a woman past 65 years of age in the exercise of ordinary care for her safety should have more closely observed the walkway or the condition of the floor. She had been in the building one time two years before October 8, 1958, and talked to the same receptionist and sat in the same chair. She had no difficulty in entering and leaving the building at that time and apparently she was in the same physical condition then as on October 8, 1958.

The lease contract between the owners, third-party defendants, and the defendant provides that it was the duty of the lessor to maintain the premises in good repair and tenantable condition during the continuance of the lease, and for the purpose of so maintaining the premises, the lessor reserved the right at reasonable times to enter and inspect the premises and to make any necessary repairs thereto.

The lessor in 1958 did make some repairs on the floor and placed new squares of tile on the concrete strip along the edge of the floor inside the front wall, but did nothing to the cupped boards or cupped tiles which were observed or should have been observed by the exercise of ordinary care.

Section 22 of the lease contract further provides that the lessor will keep the structure and installed fixtures and equipment in good repair and operating condition.

██ Since it was the duty of the third-party defendant owners to keep the building in good repair and operating condition, the court is of the opinion that they are liable to the defendant, United States of America, for the amount found due the plaintiff from said defendant.

Therefore, judgment is being entered for the plaintiff in the sum of $4,226.85 for her damages and expenses against the defendant, United States of America; and against the third-party defendants, Irene Gartenberg, Pearl Gartenberg Lippert, and Sam Gartenberg, in favor of the United States of America for said sum, together with costs. The third-party complaint against the third-party defendant, Carl Postlewate, d/b/a National Park Window Cleaners, is being dismissed.