ALFREY HEADING COMPANY *v.* NICHOLS.

Opinion delivered July 14, 1919.

NEGLIGENCE—INJURY TO PERSON COMING ON PREMISES.—The owner or occupant of land is liable in damages to those coming on to it, they using due care, at his invitation or inducement, express or implied, on any business to be transacted or permitted by him, for an injury occasioned by the unsafe condition of the land, or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist, and has given no notice of.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

C. C. Nichols sued the Alfrey Heading Company to recover damages for personal injuries sustained by stepping into a hole of hot water on the premises of the defendant caused by its alleged negligence.

The plaintiff was a witness for himself. According to his testimony, he had been working for the defendant at intervals for fifteen years and on the 1st day of November, 1917, he was pinning heading in the turning room for it. His brother, J. W. Nichols, was regularly employed by the defendant as assistant foreman and on the 1st day of November, 1917, was acting foreman. L. L. Priest was a stockholder in the defendant company and had charge of selling its wood. On the afternoon of November 1, 1917, the plaintiff went to his brother and told him that he wanted to lay off and haul some wood home. His brother told the plaintiff that he could not spare him and asked him to see Mr. Priest about getting the wood at night. He told the plaintiff that he would make arrangements with the night watchman to let him get the wood at night. The plaintiff went to see Priest, who had had charge of selling the wood for ten or twelve years and made arrangements with him to buy the wood and haul it after dark. The plaintiff quit work at six o'clock and about 7:30 o'clock, p. m., went on the premises with a wagon for the purpose of loading it with wood. He intended to load wood on the wagon that night for his father to haul for him the next morning. The plaintiff had to back the wagon around to get it in position for loading it with the wood. He did know there was any hole there and it was so dark he could not see the hole. In backing the wagon into position he stepped into a hole of hot water and burned his foot very badly. His father was with him and pulled his shoe off and in doing so brought the hide and flesh with it. The plaintiff's foot was so badly burned that he could not work for about one month and a half. He then returned to work but his foot hurt so badly that he had to quit and did not work any more until the following June. His foot pained him con-

siderably during all this time. The trial was had on the 14th day of March, 1919, and the plaintiff's foot hadn't gotten entirely well at that time.

On cross-examination the plaintiff admitted that steam arose from the hole, forming a vapor, but said it was so dark that he could not see it at the time of the accident, and only found it out after he was hurt. The hole had been there for a week or ten days, but the plaintiff had not noticed it during that time. There was a pile of clippings which obstructed his view from the place where he worked in the turning room. The hole was caused by a pipe bursting which passed from the boiler room under the ground to the kiln about twenty feet from the wall of the turning room. The wall of the turning room was solid except an open space the length of the wall about six or eight feet wide where the clippings are thrown out. The plaintiff did not know that the hole was there and did not notice the steam escaping there. It was the custom of the employees of the company to go on the premises at night and haul wood away which they had purchased from the company. The plaintiff paid Priest a dollar for the load of wood. The father of the plaintiff corroborated his testimony as to the manner in which the accident occurred and, also, in regard to the custom of the employees in hauling wood from the premises of the company after working hours. He testified that such had been the custom for several years.

L. L. Priest was a witness for the company. According to his testimony he had exclusive charge of selling the wood of the company and had been so employed for several years. He had exclusive charge of selling the wood and was paid a commission for his services. He admitted that he gave the plaintiff permission to go on the premises after working hours on the day in question for the purpose of hauling the wood. But he said that he had no authority to give him permission to do so after working hours. Six o'clock was the time when the mill was shut down. The night watchman testified that he talked with the plaintiff after the accident and the plaintiff admitted to him that he knew the hole was there.

Another witness for the defendant testified that a hole came in the steam pipe, which ran from the boiler room to the kiln, from rust; that the hole was 15 inches deep where Nichols stepped into it; that steam is conveyed from the boiler to the kiln to dry the heading; that when a hole comes in the steam pipe under the ground it is just like a kettle boiling constantly and causes steam and fog to come up all the time in cold weather; that it was a cold night in November when Nichols was hurt; that there was nothing to obstruct the vision or keep anyone from seeing the hole from the turning room; that it had been there a week or ten days.

The business manager of the company also testified that the plaintiff told him after the accident occurred that he knew the hole was there. The plaintiff denied telling the business manager and the night watchman that he knew the hole was there, and said that he did not know it was there; that it was too dark to see it when he was hurt and that he had not noticed it before that time and, also, denied knowing that Priest did not have authority to let him get the wood after working hours and again stated that it had been the custom of the employees to haul wood from the premises after working hours for several years.

The jury returned a verdict for the plaintiff and the defendant has appealed.

*E. L. Westbrooke,* for appellant.

1. Appellee was an invitee and due care having been used there was no liability. 104 Ark. 243; 89 *Id.* 128; 119 *Id.* 251; 2 Words and Phrases (2 ed.) 1192. The purpose of one entering or using premises determines whether he is there by invitation. 20 R. C. L. 69; 29 *Id.* 454. Under the rule in 89 Ark. 128 there was no invitation from appellant to Nichols. His brother, although a foreman, under the facts creates the relation of invitor and invitee.

2. If not an invitee he was a mere licensee. 22 L. R. A. (N. S.) 1047; 77 Ark. 561-6; 90 *Id.* 278-285; 8 Am. St. 611; 103 Ark. 226; 114 *Id.* 218.

3. Nichols was himself negligent. 114 Ark. 218; 103 *Id.* 226; 29 Cyc. 514; 24 L. R. A. (N. S.) 497; 10 Allen 368; 121 Ark. 556-564.

*Emerson, Donham & Shepherd,* for appellee.

It is undisputed that a dangerous and unsafe hole was negligently created and permitted to remain on appellant's premises. The hole was unprotected and was a dangerous place, and all of appellant's officers knew of its existence. This clearly shows negligence. The verdict settles the liability, as it is not claimed to be excessive and there is no error in the instructions. 29 Cyc. 453, 471; 77 Ark. 561; 89 *Id.* 122; 104 *Id.* 236.

HART, J., (after stating the facts). The principal question presented for our consideration is whether the trial court erred in refusing to direct a verdict for the defendant. It is contended that plaintiff was at most a licensee to whom the defendant owed no duty except to refrain from wilfully or wantonly injuring him while on the premises. We cannot agree with this contention. We think the undisputed evidence shows that the plaintiff was on the premises for the mutual advantage of himself and of the defendant and for that reason was there under an implied invitation of the defendant.

L. L. Priest was a witness for the defendant. According to his testimony he had exclusive charge of selling its wood at the time the accident occurred and had been so employed for several years past. His own testimony makes him an employee of the company and not an independent contractor. He sold the wood for the defendant and received a commission therefor. He did not buy the wood and sell it again on his own account. His testimony is corroborated by that of the other witnesses and made him an employee of the company.

Mr. Thompson in discussing the liability of the owner for injuries from dangerous places on his grounds to persons coming there for the common interest or mutual advantage of both parties, quoted with approval the following clear enunciation of the rule by Judge Gray of

the Supreme Court of Massachusetts: "The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted or permitted by him, for an injury occasioned by the unsafe condition of the land, or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist, and has given them no notice of." Thompson's Commentaries on the Law of Negligence (2 ed.), vol. 1, sec. 985.

This court has approved the rule as above stated. *Hobart-Lee Tie Co.* v. *Keck*, 89 Ark. 128; *St. L., I. M. & S. R. Co.* v. *Wirbel*, 104 Ark. 243; *St. L., I. M. & S. R. Co.* v. *Dooley*, 77 Ark. 561, and *St. L., I. M. & S. R. Co.* v. *Duckworth*, 119 Ark. 246.

The testimony shows that the hole in the ground was caused by the pipe rusting and making a hole in it so that the steam escaped from the pipe and formed a hole of boiling water. This condition had existed for a week or ten days and its existence was known to the defendant. As we have just seen, the plaintiff went upon the premises for the purpose of loading some wood which the defendant had sold him and stepped in the hole while backing his wagon into position preparatory to loading it. He had been directed to go there by the servant of the company who had exclusive charge of selling the wood. It is true this servant testified that he did not have authority to direct the plaintiff to go there for wood after working hours, but he had been exercising such authority for years and the plaintiff did not know of any limitation upon his authority in this respect. Under these circumstances the negligence of the defendant was a question for the jury.

It is also insisted that the plaintiff was guilty of contributory negligence as a matter of law and for that reason was not entitled to recover. We do not agree with counsel in this contention. As we have seen, the plaintiff was on the premises at the implied invitation of the defendant and it was dark when he got to the place where

the accident occurred. It is true, according to the testimony of a witness for the defendant, steam was escaping from the pipe in the ground which caused a vapor to arise from the ground. The plaintiff, however, testified that he could not see the vapor on account of the darkness and did not know that the hole was there. The hole had been there for a week or ten days and was in plain view from where the plaintiff worked in the turning room. According to witnesses for the defendant, the escaping steam or vapor could be easily discernible by any one working in the turning room. The plaintiff, however, said that his view in that direction was obscured by clippings which were thrown from the turning room through the opening and lay piled upon the ground. He stated positively that he had not noticed the escaping steam and did not know that the hole was there. He had no occasion to make an investigation of the matter and it is entirely within the range of probability that he was so engrossed in his work that he did not observe the steam escaping or the vapor rising from the ground at the place in question. Under the circumstances, the contributory negligence of the plaintiff was, also, a jury question.

It is next insisted that the court erred in refusing instruction No. 2. The instruction is as follows: "You are instructed that if the plaintiff was on the yard for his own convenience at the time he was injured, he was not an employee but was a licensee; and the company owed him no duty to exercise even ordinary care in maintaining safe premises for him to go upon."

There was no testimony upon which to predicate the instruction and the court did not err in refusing it. As we have already seen, the undisputed evidence shows that at the time the accident occurred the plaintiff was there for the purpose of hauling away some wood which he had purchased from the defendant. He was given permission to go there at that hour, and, being upon the premises in the common interest of himself and of the defendant, he was there at the implied invitation of the defendant. There was no testimony upon which to predicate an

instruction that he was on the premises as a mere licensee.

The case was submitted to the jury upon proper instructions, framed in accordance with the principles of law above announced, and, finding no prejudicial error in the record, the judgment will be affirmed.