CAPITOL CITY LUMBER COMPANY *v.* CASH.

4-8623                                        214 S. W. 2d 363

Opinion delivered November 1, 1948.

*Coffelt & McDonald,* for appellant.

*W. A. Waddell,* for appellee.

ED. F. McFADDIN, Justice. Appellees recovered judgment against appellant for $645, as damages for the wrongful cutting and removing of timber. This appeal challenges the correctness of the judgment.

## FACTS

Don McMann (at some places in the record called "John Mann") was the owner of 240 acres of land in Saline county. On January 10, 1947, he executed a timber deed, conveying to appellant all of the pine timber, eight inches in diameter at the stump, on the said lands, with the period of ten months allowed for the removal of the said timber. This was the regular form of timber deed in common use. Appellant, Capitol City Lumber Company (hereinafter referred to as Lumber Company), some time in February, 1947, commenced the cutting and moving of said timber. The date of completion will be discussed later; the Lumber Company installed a mill on the land, where the felled trees were manufactured into rough lumber, which was then hauled to the Lumber Company's plant in Little Rock.

After some preliminary negotiations, Don McMann on March 22, 1947, executed a written instrument, where-

by he contracted to sell all of the lands to appellees, Jess Cash and Coyt Smith, for $2,500, of which they paid him $500 in cash. Although there was no reference to the timber deed in the contract, it is admitted by both Smith and Cash that they understood that the Lumber Company could cut and remove from the land all of the pine timber eight inches and above at the stump.

On October 5, 1947, Cash and Smith instituted this action against the Lumber Company, claiming that the Lumber Company had cut and removed from the land 430 trees, each of which was less than eight inches in diameter at the stump. The plaintiffs claimed actual damages in the sum of $645. The Lumber Company filed a general denial. Trial resulted in verdict and judgment as previously stated; and there is this appeal.

## OPINION

We will list and discuss the several contentions made by appellant:

I. *Plaintiff's Right to Maintain the Action.* Appellant (defendant) claims that all the timber was cut and removed before March 22, 1947; and, from this, argues that the plaintiffs (appellees) cannot maintain the action, since the damage was done before the plaintiffs acquired the lands. It is unnecessary to discuss the legal aspects of this contention, because there was evidence from which the jury could have found that the timber was not cut and removed from the lands until after the appellees acquired their equitable interest. For instance, J. C. Hester, witness for defendants, admitted that the last cutting was done "in the middle of April," and that the mill was not removed from the land until "around the first of May." Again, J. E. McWilliams, bookkeeper of the Lumber Company, testified that the log cutting began on the McMann tract on February 4th, and concluded on April 18th. Some witnesses testified that the entire operation of cutting and removing the lumber and the removal of the mill was all completed by March 15th; while others placed the date as the latter part of May. At all events, a fact question was made as to whether the

timber was cut and removed after March 22nd; and we leave the verdict of the jury undisturbed.

II. *Independent Contractor Issue.* In the trial the Lumber Company undertook to show that J. C. Hester—the man who was in charge of collecting the felled trees and sawing them into lumber on the lands—was an independent contractor. The Lumber Company thus sought to escape liability by shifting the fault of cutting small trees to Hester, as independent contractor. The trial judge refused to submit to the jury any phase of the independent contractor theory, and this refusal is assigned as error. In fact, this is the assignment argued at the greatest length.

We have a multitude of cases stating the test to determine when the relationship of independent contractor exists. Two of the recent cases are: *Ozan Lumber Co.* v. *Tidwell,* 210 Ark. 942, 198 S. W. 2d 182; and *Rice* v. *Sheppard,* 205 Ark. 193, 168 S. W. 2d 198. In *Wheeler & Co.* v. *Fitzpatrick,* 135 Ark. 117, 205 S. W. 302, Mr. Justice Wood used this language: "Says Judge Elliott: 'An independent contractor may be defined as one who, in the course of an independent occupation, prosecutes and directs the work himself using his own methods to accomplish it, and represents the will of the company only as to the result of his work.' 2 Elliott on Railroads, p. 863, § 1063."

The contract between the Lumber Company and Hester was oral; and the Lumber Company sought to establish the terms of the contract by Hester. Here is his testimony on this phase of the case: "Q. What was your agreement with the Capitol City? A. Well, I had a contract to cut that stuff and they paid me so much delivered at the mill at Little Rock. Q. You ran the mill on that property? A. Yes, sir. Q. They had their cutters? A. I was supposed to cut the logs. Q. Did they furnish cutters on this tract? A. Yes. Q. Their cutters cut the logs there and your mill sawed it up and you delivered it, after it had been sawed, to Little Rock? A. That's right. Q. You had a contract with them by the thousand to do this work? A. Yes. Q. Did they pay their own cutters? A. They paid it and held it out of my wages."

Again, he testified: "Q. They hired the cutters? A. They had their own. I didn't have any and they sent theirs out there. Q. Capitol City sent men out to cut the timber? A. That's right. Q. You didn't have anything to do with them? A. Nothing more than if I were out there and noticed them cutting under eight inches I would have stopped them. Q. You didn't do that? A. No, I didn't."

From this evidence, it is clear that the Lumber Company paid a certain amount per thousand for all timber cut, sawed and delivered; but it is also clear that the Lumber Company sent its own men on the land, who cut the trees without any supervision of, or instructions from, Hester, the alleged independent contractor. This last-mentioned fact—established by the Lumber Company's own witness—is the antithesis of the independent contractor relationship, and fully justified the trial court's refusal to submit to the jury any issue concerning independent contractor. Hester was not an independent contractor insofar as concerned the cutting of the trees, because the Lumber Company sent its own employees (cutters) into the woods, and they cut the trees without any supervision of, or instructions from, Hester. So appellant's assignment on this point is without merit.

III. *Plaintiff's Right to Recover.* Witnesses for the plaintiffs testified that 429 trees were cut, each being less than eight inches in diameter at the stump; and these witnesses fixed the plaintiffs' damages at $645. Defendant's witnesses testified that only 203 trees were cut, each being less than eight inches in diameter at the stump; and these witnesses fixed the plaintiffs' damages at $60. The amount of the verdict is not challenged here; but it is claimed that the appellee Smith assisted in hauling some of the felled timber to the mill; and therefore—it is claimed—that none of the appellees should recover anything.

The appellants had their theory of this issue submitted to the jury in an instruction * which read:

---

* Whether both plaintiffs would be defeated by the knowledge and acts of one is not an issue in this case.

."If you find that the plaintiff Smith was in the employ of Joe Hester and assisted in the hauling of the logs cut on the lands described in this case, and that he stood by and aided and abetted in the hauling of said logs, and that he knew that said logs had been cut for which he and the plaintiff Cash are now endeavoring to recover damages therefor, and that he raised no objections thereto, then your verdict in this case should be for the defendants."

Smith denied that he knew, at the time he assisted in hauling the timber, that any of the logs were less than eight inches in diameter at the stump. Other persons also hauled, and Smith's testimony—together with other evidence in the record—made a fact question under this instruction; so the jury's verdict will not be disturbed.

Affirmed.

WINE, J., dissents.