**TEXTRON, Inc., a corporation, Appellant,**

v.

**HOMES BEAUTIFUL, Inc., a corporation, Barney Sigel, Kathryn B. Sigel and Harry D. Goldberg, Appellees.**

**No. 16023.**

United States Court of Appeals. Eighth Circuit.

Dec. 16, 1958.

M. L. Culhane, Minneapolis, Minn. (M. E. Culhane and James E. Culhane, Minneapolis, Minn., on the brief), for appellant.

Joseph A. Rheinberger, St. Paul, Minn., for appellees.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

SANBORN, Circuit Judge.

This action was brought by Textron, Inc., as plaintiff, against Homes Beautiful, Inc., and its officers, Barney Sigel, Kathryn B. Sigel and Harry D. Goldberg, to obtain a judgment against them for $7,165.56, representing a balance due Textron for materials sold and delivered. Jurisdiction was based on diversity of citizenship.

The claim upon which the action was based was stated in the complaint as follows:

"That between March 12, 1956 and October 26, 1956, the plaintiff sold and delivered to Homes Beautiful Inc. one of the defendants, as a contractor for various real estate owners, as more fully appears, material for improvements of the real estate of such owners, to-wit, aluminum doors, or aluminum windows or alu-

minum window screens, or in some instances, all of these materials. That the aluminum doors, aluminum windows and aluminum screens were all made to order for such defendant and for each particular piece of real estate to be improved. That the description of the material for each piece of real estate to be included was on separate order and covered by plaintiff by separate invoices. That such material was in each instance used to improve the real estate for which plaintiff sold it. That hereto attached and made a part of this complaint is a true itemized list of such purchases and sales showing the value of the material sold and delivered, the date of each sale and the number of each invoice, the name of the real estate owner and the location of the real estate. That also attached to this complaint and made a part thereof as Exhibit B is a statement setting forth the dates and amounts of all payments and credits on the purchases above mentioned. In some instances the name of the real estate owner and the real estate improved is not known to the plaintiff but is known to the defendants. That the total amount of material sold as above set forth is $27,596.37, no part of which has been paid except $20,430.51. That the defendant Homes Beautiful Inc., received payment in full for the amount of the improvements above mentioned and with intent to defraud this plaintiff used the sum of $7,165.56 for other purposes than payment for the material above described although the sum of $7,165.56 then remained and still remains unpaid on the material hereinbefore described.

"That as a result of the fraud of the defendant Homes Beautiful Inc., and its officers, as hereinbefore set forth, the plaintiff has been damaged in the sum of $7,165.56. That the plaintiff has demanded payment of such sum, but payment has not been made."

The answer of the defendants was a general denial, but at a pre-trial conference it was admitted that Homes Beautiful, Inc., was indebted to Textron in the amount claimed, for materials sold and delivered as alleged in the complaint. The defendants denied that any of them had any intent to defraud in failing to apply the proceeds of sales to payment in full of what was owed Textron. The individual defendants admitted that they were officers of Homes Beautiful, Inc., but denied that they, or any of them, were indebted to Textron in any amount.

The issues were tried to the court, which in its decision stated the facts as it found them to be and its conclusions of law, and determined that only the corporate defendant was liable to Textron for the unpaid balance due it. The court said in its decision:

"Counsel for plaintiff attempts to predicate liability on the part of the corporate officers under Section 514.-02, Minnesota Statutes [M.S.A.]. This criminal statute reads:

" 'Contractor guilty of fraud; larceny.

" 'Any contractor or subcontractor on any improvement to real estate within the meaning of section 514.-01, who, with intent to defraud, shall use the proceeds of any payment made to him on account of such improvement by the owner of such real estate or person having any improvement made, for any other purpose than the payment for labor, skill, material, and machinery contributed to such improvement, while any such labor performed, or skill, material, or machinery furnished for such improvement at the time of such payment remains unpaid for, shall be guilty of larceny of the proceeds of such payment so used.'

"We are not dealing, of course, with mechanic lien law as such. No liens have been filed here. No attempt was made by Textron to file any liens, nor did Textron ever request that Homes Beautiful should

earmark or segregate the funds which it received from home owners who had installed Textron's products on their premises. The evidence will not sustain a finding that there has been any conversion of funds by the defendants or any of them.

"As stated, all of Textron's products were sold on open account. The mere fact that Homes Beautiful was paid in full for Textron's products does not, in and of itself, establish fraud on the part of the corporation or its officers. There must be an intent to defraud. See Survis v. A. Y. McDonald Mfg. Co., 1947, 224 Minn. 479, 28 N.W.2d 720. Where there is a failure to pay a seller for merchandise purchased on open account by reason of poor business judgment, over-expansion, or business ups and downs, there is no justification to stamp such failure as a fraudulent act in absence of evidence indicating that there was an intent to defraud. Under the circumstances disclosed by the evidence herein, the money Homes Beautiful received from the home owners who had paid for Textron merchandise could be used by that corporation for ordinary business purposes in absence of an intent to defraud. It is not made to appear here that the defendant corporation was handling trust funds which could not be deposited in the corporation's bank account and commingled with other receipts received by the corporation from its general business operations. It seems clear that the plaintiff has failed to establish any right of recovery against any of the defendants except the corporate defendant."

By sixteen assignments of error, Textron challenges the findings and the decision of the trial court, and asserts that its judgment was induced by an erroneous view of the law. In its brief, under "Points and Authorities," Textron says: (1) that under the Mechanic's Lien Statutes of Minnesota, Sec. 514.01, Minn. Stat., M.S.A., the materials furnished Homes Beautiful were lienable items; (2) that, under Sec. 514.02, Minn.Stat., M.S.A., the use by Homes Beautiful of the proceeds of payments made to it for such materials except as payments to Textron gave rise to civil causes of action in its favor against Homes Beautiful and its officers, who are jointly liable with it for having violated Section 514.02.

In its brief, Textron also says: "There are no disputed questions of fact in the instant case. There are only questions of law. There is no pleading nor evidence of a single sale on open account nor was such an issue litigated." This statement, we think, is not strictly accurate, in view of the following testimony of Barney Sigel:

"My address is 1943 Fairmount Avenue, St. Paul. I am interested in a corporation known as Homes Beautiful Inc. I hold stock in it. I am the only stockholder. I am also an officer of the corporation. I have been in court while testimony has been given by the plaintiff in this matter. Between March 12, 1956 and October 26, 1956 the plaintiff, Textron, sold goods to Homes Beautiful Inc. At the time that this account was opened with Textron nothing was said about how payment was to be made on it. The usual procedure, Homes Beautiful went through, when goods were purchased from Textron, was as follows. After we had determined what size windows we wanted, we would order the windows either by telephone or by sending down a purchase order to Stormaster Company and they would in return give us an approximate date when the windows were to be ready. When we had that date, we sent one of our men with his truck to Stormaster and pick up the windows. That is owned by Textron. We actually did business with Stormaster, a company known as Stormaster of the Northwest. I had heard from Mr. Tilsner and perhaps some other people that Textron had

bought out the corporation. Homes Beautiful first made a payment to plaintiff on May 21, 1956. On that date we owed Textron $1,398 and paid them $500 on account, leaving a balance of $898. I don't recall talking with Mr. Tilsner before July 12th in regard to the payments for merchandise. The balance on that date was $4,288.50. The corporation made the payment. All our negotiations were with Textron. They were made by the corporation known as Homes Beautiful Inc. Homes Beautiful Inc., was a corporation. We began to experience some financial difficulty in the year 1956. I think our trouble really started about December, 1955, or the early part of January, 1956 when we moved from 3502 to 3540 East Lake Street. We went into a building about four or five times as big as we formerly occupied and we spent about $8,000 to $9,000 improving it and fixing it up, and making displays and remodeling and starting a factory and purchasing equipment to build a factory in our basement for the manufacture of aluminum windows. We were under the impression that we could make windows cheaper than we could buy them. After two or three months we found it cost more to make than we were led to believe. We suffered a considerable loss in the manufacture of aluminum windows."

■■ The rule that where opposing inferences reasonably may be drawn from undisputed facts it is for the trier of the facts to determine what inference shall be drawn, is too well established to call for the citation of authorities, but see Boehm v. Commissioner of Internal Revenue, 326 U.S. 287, 293, 66 S.Ct. 120, 90 L.Ed. 78, and Weiss v. Commissioner of Internal Revenue, 8 Cir., 221 F.2d 152, 156. The inference drawn by the trial court that Textron extended credit to Homes Beautiful for materials sold and delivered, we regard as reasonable.

For the purposes of this opinion, we shall assume that if the failure of the defendants to turn over to Textron to the extent of full payment the proceeds received by Homes Beautiful from the sale of materials which it purchased from Textron, was induced by an intent to defraud, Homes Beautiful and its officers would be civilly liable by virtue of Sec. 514.02, Minn.Stat., M.S.A. See and compare, Olesen v. Retzlaff, 184 Minn. 624, 238 N.W. 12, 239 N.W. 672, 78 A.L. R. 891.

■■ Under the evidence in this case, the question of intent was, in our opinion, a question of fact for the trial court, and not a question of law for this Court. See Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 743, 69 S.Ct. 1210, 93 L.Ed. 1659. Having decided that issue in favor of the defendants, we fail to perceive how the trial court, in view of the teachings of the Supreme Court of Minnesota in Survis v. A. Y. McDonald Mfg. Co., 224 Minn. 479, 28 N.W.2d 720, logically could have reached a different result than that of which Textron complains.

In the Survis case, on pages 500 and 501 of 224 Minn., on pages 731 and 732 of 28 N.W.2d, the court said of the statute upon which Textron relies:

"* * * the essential elements of the statute appear to be as follows: (1) An improvement to real estate by labor or materials; (2) a payment made on account of such improvement to the contractor or subcontractor; (3) use of the proceeds of the payment by the contractor or subcontractor for a purpose other than the payment for labor and materials and failure to pay for such labor and materials; and (4) intent to defraud.

* * * * * *

"* * * It is our opinion that where, as in this case, the person supplying materials fails to reserve title thereto and maintains accounts in a manner not clearly indicating an intent to treat failure to designate

the source of the funds as a breach of the obligation to make payment of the debt, the third element of the statute above specified is not established.

"Apart from the foregoing, we do not feel that there was any reasonable basis for the belief that plaintiff intentionally defrauded defendants. McDonald had seen fit to extend credit to plaintiff, apparently relying on his integrity and good faith. The failure of plaintiff to specify the source of the two $250 checks which he sent to McDonald can hardly be attributed to an intent to defraud McDonald of the money which he was sending to him in the form of checks. It appears that, although plaintiff went to California while indebted to McDonald in the amount of $1,354.51 without notifying defendants of his intention to do so, the circumstances which caused him to do so were adequately explained in plaintiff's letter to McDonald of April 27, 1942, in which he recited the misfortunes he was having and which had made it necessary for him to go to California to find employment in a defense plant. Prior to the time the criminal process issued, plaintiff had on several occasions acknowledged his indebtedness to McDonald and had made an apparent good-faith effort to reduce the indebtedness by periodic payments. It is our opinion that if McDonald had taken appropriate steps to investigate the facts before signing the criminal complaint it would have been discovered that the proceeds received on account of the improvements to the Uleberg real estate had in fact been paid to defendants. Apart from this, we do not find sufficient evidence of any intent to defraud on the part of plaintiff to justify the institution of criminal proceedings. We therefore hold that under the circumstances of this case defendants did not have probable cause for instituting the criminal prosecution."

■■ It seems to us that the most that Textron can contend for here is that the controlling question of State law is not entirely free from doubt, and that if this case was before the Supreme Court of Minnesota it might perhaps hold that, under the evidence, the proceeds derived by Homes Beautiful from the sale of the lienable materials purchased from Textron were, regardless of the intent of the former and its officers, impressed with a trust in favor of the latter. This Court, however, is not the Supreme Court of Minnesota and establishes no rules of law for that State. The burden of demonstrating that the District Court misconceived or misapplied the State law is that of Textron. This Court has repeatedly said that it will not attempt to outpredict, outforecast or outguess a trial judge with respect to a doubtful question of the law of his state. Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733; United States v. R. D. Wilmans & Sons, Inc., 8 Cir., 251 F.2d 509, 511; Nugent v. General Insurance Co. of America, 8 Cir., 253 F.2d 800, 802; Buder v. Becker, 8 Cir., 185 F.2d 311, 315.

It is our conclusion that the result of the trial of this case was due to no misconception or misapplication by the trial judge of State law. The judgment appealed from is affirmed.