Inez Humphreys DIXON et al.,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 16741.

United States Court of Appeals
Eighth Circuit.

Dec. 7, 1961.

Steele Hays, Little Rock, Ark., for appellant.

James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., made argument for the appellee. Osro Cobb, U. S. Atty., Little Rock, Ark., Heiskell B. Kelley, Atty., U. S. Dept. of Agriculture, Little Rock, Ark., was with him on the brief.

Before VOGEL, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal from final judgment dismissing plaintiffs' wrongful death action, brought under the Federal Tort Claims Act.

Richard Humphreys was engaged by John Lancaster (his father-in-law), lookout dispatcher under the supervision of Ranger McIlroy, to clean a 47 foot well located at the Cove Mountain Tower Station. A dispute exists as to whether Mr. Humphreys was to do the work as an employee or an independent contractor, which issue is hereinafter discussed.

Mr. Humphreys on May 24, 1956, proceeded to carry out the well cleaning job. He entered the well by means of a rope with the aid of John Lancaster. After he reached the bottom of the well, he disengaged himself from the rope and filled several buckets with dirt, which were drawn up to the surface. He then stated he wished to be pulled up, but fell to the bottom before he could be raised to the surface. The well is located in a remote spot and more than fifteen minutes elapsed before aid, which had been promptly summoned, arrived. Upon removal from the well, Mr. Humphreys was pronounced dead. The examining doctor attributed death to gas poisoning.

It is undisputed that the lookout station was operated by the United States Department of Agriculture through its Forest Service Department. This action is brought by plaintiff Inez Humphreys Dixon as surviving spouse on her behalf and as next friend of decedent's minor children, under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), which permits claims for injury or death "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Arkansas Statutes Annotated (1947), §§ 27–903 and 904 [1] authorized the spouse and next of kin of a decedent to bring an action for wrongful death.

The complaint alleges that Mr. Humphreys, at the time of his injury and death, was an employee of the Government Forest Service and that his death was caused by the negligent acts of omission and commission on the part of Government employees acting within the scope of their employment in failing to advise Mr. Humphreys of the danger of noxious gases within the well, the presence of which the Government employees knew, or by the exercise of reasonable care, should have known; in failing to provide a safe place to work; in failing to provide safe means of ingress and egress from the bottom of the well; in failing to provide for assistance in event of emergency, in failing to inspect the well for noxious gases; and undertaking a hazardous operation without taking precautions for the safe performance thereof.

The Government denied that its employees were guilty of any negligence, denied that Humphreys was a Government employee, and alleged that Humphreys' status at the time of his death was that of independent contractor, and that his injuries were proximately caused by his own negligence or that of those working under his control and direction, and that the Government owed no duty upon which to predicate the negligence alleged in the complaint.

This case was tried to the court without a jury. The court in a memorandum opinion (not reported) and findings of fact and conclusions of law, determined that plaintiffs' decedent at the time of his death was an independent contractor, not an employee, and that the Government and its employees were guilty of no breach of any duty of care owed to the independent contractor.

The court also found Humphreys was an invitee and further determined that under the circumstances of the case the Government employees had no knowledge of the dangerous condition of the well nor were they chargeable in the exercise of reasonable care with the knowledge of such condition.

Final judgment was entered dismissing the complaint. This timely appeal followed.

As a basis for reversal, plaintiffs make the following points:

I. The trial court erred in concluding that Richard Humphreys was an independent contractor rather than an employee.

1. These statutes were repealed in 1957 and replaced by Arkansas Statutes 27–906 to 27–910. Such statutory change does not affect this litigation.

II. Having held that Richard Humphreys was an independent contractor, the trial court erred in not concluding that the defendant, through its employees, breached a duty to warn Richard Humphreys of the dangerous condition of the well, of which condition the employees were aware or in the exercise of reasonable care should have been aware.

### I.

Upon the issue of whether Humphreys was an employee or an independent contractor, the trial court thus states the applicable law:

"The relationship between the parties is so casual as to make categorizing into legal definitions difficult. Arkansas law almost exclusively applies the 'control' test. The rule is that where the contract shows an intent that the employer retains control and direction of the means and method of producing the result, a master-servant relationship is created; but where the contract shows an intent that the employer controls only the result, then the relationship of independent contractor exists. Wilson v. Davison, 122 S.W.2d 539, 197 Ark. 99; Arkansas Fuel Oil Co. v. Scaletta, 140 S.W.2d 684, 200 Ark. 645; Ozar Lumber Co. v. Tidwell, 198 S.W.2d 182, 210 Ark. 142; American Casualty Co. v. Harrison, D.C., 96 F.Supp. 537; Capitol City Lumber Co. v. Cash, 214 S.W.2d 363, 214 Ark. 35. The federal rule is essentially the same. Hopson v. U. S., D.C., 136 F.Supp. 804."

To like effect, see Massey v. Poteau Trucking Co., 221 Ark. 589, 254 S.W.2d 959, 961; Hutcheson v. Clapp, 216 Ark. 517, 226 S.W.2d 546, 549; Wright v. McDaniel, 203 Ark. 992, 159 S.W.2d 737, 740; Humphries v. Kendall, 195 Ark. 45, 111 S.W.2d 492, 498; Chapman & Dewey Lumber Co. v. Andrews, 192 Ark. 291, 91 S.W.2d 1026.

As we read plaintiffs' brief, we do not understand that plaintiffs attack the court's interpretation of the Arkansas law. Plaintiffs' brief states:

"The major factor, according to the general rule, followed in Arkansas, is that of *control*. If the worker is under the control and direction of the employer, the relationship is that of master and servant. This has been called 'the vital test' by the Supreme Court of Arkansas."

■ It is quite true, as plaintiffs contend, that all the evidence must be considered. The fact-finder, in resolving the ultimate issue of the nature of the relationship, must consider all the evidence, such as that bearing upon the nature of the work undertaken, and whether it requires special skill, or is menial, the obligation to furnish tools and equipment, the method of payment, and the form of the contract.

■ The Arkansas court has frequently stated that no rule of unvarying application can be formulated for determining whether a workman is a servant or independent contractor, and that the case must be determined upon its own peculiar facts. Massey v. Poteau Trucking Co., supra.

■■ Plaintiff urges that there is no substantial dispute as to the material facts and for that reason the clearly erroneous rule should be relaxed and in effect that we should try the case de novo and substitute inferences we might draw from the evidence for those drawn by the trial court. We have consistently held that we will not try de novo doubtful fact issues. It is the right and duty of the trial court to determine disputed fact issues and this includes drawing permissible inferences from undisputed facts. Miller v. Commissioner, 8 Cir., 295 F.2d 538 (decided October * * * 1961); Textron, Inc. v. Homes Beautiful, Inc., 8 Cir., 261 F.2d 646, 650; Crown Iron Works Co. v. Commissioner, 8 Cir., 245 F.2d 357, 360. See also Commissioner of Internal Revenue v. Duberstein, 363 U. S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

In the Textron case, we state:

"The rule that where opposing inferences reasonably may be drawn from undisputed facts it is for the

trier of the facts to determine what inference shall be drawn, is too well established to call for the citation of authorities, but see Boehm v. Commissioner of Internal Revenue, 326 U.S. 287, 293, 66 S.Ct. 120, 90 L.Ed. 78, and Weiss v. Commissioner of Internal Revenue, 8 Cir., 221 F.2d 152, 156." 261 F.2d 650.

The Arkansas law is no different in this respect. In Hutcheson v. Clapp, supra, the court states:

"We have repeatedly held that if the contract is oral, and if more than one inference can fairly be drawn from the evidence, the question should go to the jury to determine whether the relationship is that of employer and independent contractor or that of master and servant. Wright v. McDaniel, 203 Ark. 992, 159 S.W.2d 737; Ozan Lumber Co. v. Tidwell, 210 Ark. 942, 198 S.W.2d 182. We conclude that the trial court properly submitted the issue to the jury. There is substantial evidence to support the verdict when the conflicting testimony is viewed in the light most favorable to appellee, and this court cannot set the verdict aside even though it may be against what we might conceive to be the preponderance of the evidence." 226 S.W.2d 549.

The trial court, in support of its finding of an independent contractor relationship, states:

"The contract in this case was oral and casual. Nevertheless, it appears from the evidence that McIlroy and Lancaster, under McIlroy's direction, sought to engage someone outside the government employ, one whom they believed to have special qualifications and experience, and who was to be in complete charge of accomplishing the result of a clean well. The arrangement was that Hum-phreys would enlist any assistance he needed, and supply his own equipment except for the rope and pulley. The contract price was suggested by Humphreys.[2] No control of method or manner was exercised by government employees, nor does the contract show any intent that government employees would have a right to control. Plaintiff points out that McIlroy testified that he supposed he could have directed the procedure. Certainly, he might have engaged one to do the work under his or another employee's direction, but the arrangement here negates an intention to do so. Lancaster's assistance was not supervisory and it was not offered as a government employee, but volunteered after hours upon seeing the difficulty of his son-in-law managing alone.

"The evidence discloses more controlling elements of an independent contractor relationship than a master-servant relationship, and the court will accordingly find that Richard Humphreys was an independent contractor."

■ A careful examination of the record satisfies us that the trial court's findings on the independent contractor issue are supported by substantial evidence, and that the inferences that the court has drawn from the evidence are reasonable and permissible. It has not been shown that the court's findings were induced by an erroneous view of the law. Thus the court's determination that Mr. Humphreys was an independent contractor must be sustained.

The general rule is that an employer is not liable for injuries sustained by an independent contractor in the prosecution of the contracted work, in the absence of affirmative acts of negligence on the part of the employer which cause or contribute to the injury. Humphries v.

---

**2.** Plaintiffs in their brief challenge the statement that Humphreys suggested the contract price. The record indicates that Humphreys initially offered to do the work for $6 but that he adopted the $8 contract price when his father-in-law Lancaster indicated that he believed the Government would pay $8 for the work.

Kendall, supra; Meyer v. Moore, 195 Ark. 1114, 115 S.W.2d 1087, 1091.

The trial court found that the only affirmative act on the part of the Government was the furnishing of the tripod, pulley and rope, and that none of such equipment was defective in any way. The court on this record was entitled to find as it did, that the defendant and its employees were guilty of no affirmative acts of negligence, and except with respect to the duty owed to an invitee, which is next discussed, the court was justified in finding that neither the Government nor its employees were guilty of any of the acts of negligence charged by the plaintiffs.

## II.

■ The court, having determined Mr. Humphreys was an independent contractor, found that he was an invitee on defendant's premises and that as such he was entitled to be warned of a latent danger known, or which by the exercise of reasonable care should be known, to the defendant and its employees. Such appears to be a correct statement of Arkansas law. Alfrey Heading Co. v. Nichols, 139 Ark. 462, 215 S.W. 712, 714.

We find nothing in plaintiffs' brief challenging the correctness of the court's determination of the applicable law. It appears to be plaintiffs' contention that the court misapplied the law to the facts.

There is no substantial evidence to support a finding that any of the Government employees had actual knowledge of the dangerous condition in the well. Plaintiffs, in their brief, state:

"We would concede at this point that undoubtedly *no one of the three men* involved (McIlroy, Lancaster or Humphreys) could be charged with actual knowledge of the *present* existence of poisonous gas within the well."

■ Thus, the issue is narrowed to the question of whether there is substantial evidence to support the court's finding that the Government employees were not guilty of any negligence in failing to exercise reasonable care to determine the premises to be safe, particularly with respect to the presence of poisonous gas. The court states:

"The question, then, applying the rule to this case is: 'Should the government employees, in the exercise of reasonable care, have inspected the well for noxious gases, as well as for loose rock, safety of equipment furnished, etc.?' All of the witnesses on both sides who were questioned in this regard were aware that there was such a thing as 'damp' gas and realized that the danger existed in some wells. Humphreys knew of the danger of gases as evidenced by his conversation with Lancaster to the effect that he had forgotten his carbide light. Lancaster offered him an oil lantern. Upon asking Lancaster if he had been in the well with no ill effects and receiving an assuring reply, Humphreys proceeded into the well.

"The long experience with the well has been used by both sides to support their positions. At least four persons testified to having been in the well on different occasions, three of them for well over an hour. One of the persons suffered from a headache, another unconsciousness, and the third no ill effects. The ill effects were explained by the fact that dynamite had been used on the occasion when those persons were in the well.

"Even if a rule could be stated that a reasonably prudent person would inspect a well for noxious gases, the long experience with this particular well would, I think, assure a reasonably prudent person of the absence of danger, at least for the time required to clean the well, rather than forewarn of a danger from noxious fumes. It would tend to relieve any burden of inspection, beyond what could be seen on visual inspection, which reasonably might be required on less familiar premises."

The evidence discloses that Lancaster himself had been in the well some thirty

times without suffering any ill effects, and that the well had last been cleaned by Lamb in 1950. Lamb had spent an hour or more in the well and suffered no injury to his health. Flewellen and Talent had spent considerable time in the early 1930's, in digging the well; had some trouble at times with smoke from dynamite blasting; Talent, a headache and some dizziness when he stayed in the pit an hour and fifty-five minutes in connection with a bet with his associate as to who could stay in the well the longer, and on one occasion Flewellen became unconscious as he was coming out of the well. There is evidence that such difficulties could have been caused by dynamite blasting.

Lancaster was a Government employee, stationed at the lookout tower, whose principal duty was to keep a lookout for fire. We believe the fact-finder was justified in determining that Lancaster at the time of the accident was not working for the Government, but was working under the direction of his son-in-law. Lancaster had been advised by his superiors and had told Humphreys that Humphreys was to furnish all safety equipment except the tripod, rope and pulley, and that he was to furnish his own assistants, and to be responsible for all safety measures, and that he was to be paid an agreed fee. Lancaster was off government duty when Humphreys arrived and had no government authority to assist in the cleaning operation. Humphreys had made a tentative arrangement with Dixon to help him, but Dixon was not available when the work was performed.

Lancaster only gave Humphreys truthful answers to questions as to his experience in the well. He did nothing to dissuade decedent from taking precautions deemed advisable. The responsibility for the manner of doing the work rested with the decedent as an independent contractor. Decedent, by calling attention to overlooking bringing his carbide lamp, and asking the questions as to Lancaster's experience with the well, could be said to have at least impliedly recognized the possible danger of presence of gas,

and his responsibility to take precautions to ascertain whether gas was present in the well.

The accident here presented is a serious and tragic one. Plaintiffs' right to recovery is governed by statute. Liability is based upon negligence. Substantial evidentiary support exists for the trial court's determination that plaintiffs have failed to establish any negligence, breach of duty, or any other basis of liability on the part of the Government or its employees.

The judgment is affirmed.