E. C. OLLAR and Maude OLLAR, His
Wife *v.* Mr. and Mrs. George SPAKES
d/b/a GEORGE'S PLACE

80-81                                           601 S.W. 2d 868
Supreme Court of Arkansas
Opinion delivered July 7, 1980

*Baim, Baim, Gunti, Mouser & Bryant*, by: *Kenneth B. Baim*, for appellants.

*Edward I. Slaten, P.A.*, for appellees.

JOHN I. PURTLE, Justice. E. C. and Maude Ollar, appellants, argue that the trial court erred in granting a motion for a summary judgment against them in their suit against Mr. and Mrs. George Spakes, d/b/a George's Place, appellees, for damages arising from injuries received by Maude Ollar in a fall she suffered as she approached the restaurant operated by appellees. We disagree with appellants' argument and affirm the judgment of the trial court.

The complaint alleged that on November 3, 1976, appellants were proceeding toward appellees' restaurant when the injury occurred. The complaint also stated that the appellants intended to dine at appellees' restaurant; and, upon finding the parking lot at George's full, they proceeded to park on the lot next door. It was after dark; and, as, appellants walked from their parking place to appellees' premises, Mrs. Ollar fell over a railroad crosstie before reaching the parking lot owned by appellees. Damages were claimed due to the injuries sustained by Mrs. Ollar.

Appellants allege that appellees were negligent, but the abstract of the record does not contain the particular acts which were alleged to have been negligent.

In their answer, appellees denied the allegations of the complaint and that the accident occurred on their premises. Appellees also argued that the fall was caused by Mrs. Ollar's negligence and that her negligence was greater than the negligence of the appellees, if they were indeed negligent at all.

Appellees moved for a summary judgment on the grounds that the appellants were not on their property at the time of the injury, that appellees were not negligent, and that the Ollars assumed the risk of injury. The motion was based upon the pleadings and depositions of the parties and a Mrs. Herrod, a witness who owned the lot next door. Viewed in the light most favorable to appellants, the record disclosed the following facts:

The Ollars went to George's Place to eat after they

had closed their place of business, as they had done once or twice a week for two or three years. Whenever they could, they parked on the parking lot at George's Place. If the parking lot at George's was full, they usually parked on Mrs. Herrod's lot next door. On the date in question, George's parking lot was filled to capacity, and the appellants parked on Mrs. Herrod's lot next to George's.

Mrs. Herrod had placed a row of crossties from the north to the south length of her property very near the boundary line between her lot and that of the appellees. The Ollars had parked on the lot previously and were aware of the crossties which had been located in approximately the same place for at least six years. On the night in question, one of the crossties was slightly out of line and apparently Mrs. Ollar stumbled on it and fell to the ground between the crossties next to the boundary line between the lots. She did not know whether she fell on George's lot or Mrs. Herrod's lot.

Mrs. Herrod had placed a sign on either side of her property warning people not to park on her lot. Each sign was about 4 feet x 4 feet and placed approximately on the property line facing 28th Street. The Ollars denied noticing these signs although Mrs. Ollar acknowledged she had parked on the Herrod lot previously when the lot at George's Place was full.

After Mrs. Ollar fell, the appellees came out of the restaurant and one of them stated: "Well, we have tried to get Irene to move these things and she hasn't done it, and she said that this thing might happen to me sometime." The purpose of the crossties being placed down was to keep traffic from coming from George's Place onto Mrs. Herrod's parking lot. Originally, the ties had been fastened down with steel pins but apparently vehicles had jarred them loose, and they were subject to being moved by vehicles. Appellees and Mrs. Herrod were not on good terms because she had come into George's Place and ordered his customers to go and move their cars when they were parked on her lot. She

had called the police and had cars towed away. About six years earlier, George had moved one of the crossties which became loose and apparently extended over to the edge of his property. After George's Place closed, the Harrods retrieved the crosstie and replaced it in the line of ties separating the property.

Appellees had complained to Mrs. Herrod about having the crossties placed there to prevent vehicular traffic onto her lot. They also complained about her having cars of their customers towed away. Appellees had informed Mrs. Herrod they felt she owed their customers a place to park, and she informed them she felt she owed the customers nothing. Mrs. Herrod warned people by word and signs and by the crossties that she did not want George's customers parking on her lot.

After appellants backed their car into a parking space on the Herrod's parking lot, they got out of their vehicle and proceeded toward George's Place when Mrs. Ollar stumbled and fell. At no time did any testimony place the crosstie on the property of appellees.

There were no lights on Herrod property. There was a street light on the southeast corner of George's parking lot and two neon-type signs on the lot. In any event, there was not enough illumination for Mrs. Ollar to observe the crosstie before she fell.

Appellants argue that appellees were negligent because they knew the danger was created to their business invitees by the location of the crossties and the absence of lighting during darkness. They further contend that although appellees were aware of this situation, they took no action to stop their customers from parking on the adjacent lot. In summary, they allege that appellees did not use ordinary care to prevent injuries to those business invitees on their way to appellees' place of business.

It is the duty of an owner or occupier of land to his business invitees to maintain a reasonably safe condition for

those coming upon his premises. Although we have found no cases in Arkansas holding that this duty goes beyond the limits of the business property, we quoted a Massachusetts case in *Alfrey Heading Co.* v. *Nichols,* 139 Ark. 462, 215 S.W. 712 (1919), which stated:

> The owner or occupant of land is liable to those coming to it, using due care at his invitation or inducement, express or implied, on any business to be transacted or permitted by him, for an injury occasioned by an unsafe condition of the land, or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist, and has given them no notice of.

Therefore, the liability of the owner operator of a business to an invitee is not necessarily confined to his property boundary lines; however, before extraterritorial liability attaches, it must be shown that the owner or operator had actual or constructive knowledge of the danger of injury to his invitees. When an owner or operator learns or should have learned of a dangerous condition existing adjacent to his property and fails to attempt to correct the condition or warn the invitees of such danger, he is guilty of negligence.

In this case it cannot be said that appellees knew of the danger of injury to their invitees. The most that can be said is that they were aware that the crossties were present and that they created an inconvenience to customers coming from the Herrod lot to their own. There was no evidence, or even an inference, that other people had been injured due to the existence of the crossties.

There is no dispute that the appellants were business invitees. The duty owed to an invitee is that of ordinary care to keep the premises in reasonably safe conditions. *Davis* v. *Safeway Stores, Inc.,* 195 Ark. 23, 110 S.W. 2d 695 (1937). The owner is not an insurer of the safety of invitees on his premises, but his liability to an invitee must be based upon negligence. *Kroger Grocery & Baking Company* v. *Dempsey,* 201 Ark. 71, 143 S.W. 2d 564 (1940). An owner may be held liable when injury could have been avoided by timely notice

of a defective condition on the premises. *St. Louis I. M. & S. Ry. Co.* v. *Dooley,* 71 Ark. 561, 92 S.W. 789 (1906). In *Little Rock Land Co.* v. *Raper,* 245 Ark. 641, 433 S.W. 2d 836 (1968), we stated:

> The owner is liable regardless of his lack of knowledge of the defective condition if it was also unknown to an injured invitee, when the surrounding circumstances are such that the former could and would have known of the dangerous condition had he exercised reasonable care and foresight for the safety of those who might come upon his premises by invitation, express or implied.

It is noted that the owner of the premises must have known of the dangerous condition or could have, in the exercise of reasonable care, discovered such dangers before he will be held liable. As previously stated, there was no indication that the crossties on his neighbor's property constituted a danger to the customers of the appellees. Furthermore, the appellants knew of the existence of the crossties; and, by parking on the adjacent lot, they assumed the risk of safely traversing the crossties in order to reach George's Place.

Even though we cannot say that the appellants absolutely failed to imply or allege any negligence on the part of the appellees, we must frankly state that we could not affirm a judgment on their behalf based upon the pleadings, depositions, and the record of this case even when we consider all reasonable inferences deducible from them.

We have viewed the evidence in the light most favorable to the Ollars and have resolved all doubts and inferences against the appellees, as we must. *Russell* v. *City of Rogers,* 236 Ark. 713, 368 S.W. 2d 89 (1963). We recognize the burden is upon appellees to show that no justiciable issue exists. *Widmer* v. *J. I. Case,* 243 Ark. 149, 419 S.W. 2d 617 (1967). We are also aware that a summary judgment is an extreme remedy which should be granted only when there is no genuine issue of material fact. *Wirges* v. *Hawkins,* 238 Ark. 100, 378 S.W. 2d 646 (1964).

Affirmed.

HICKMAN, and MAYS, J.J., concur in the result.

FOGLEMAN, C.J., dissents.

JOHN A. FOGLEMAN, Chief Justice, dissenting. I could readily agree with the majority if this were not a case involving summary judgment. I submit that the trial judge and the majority have used the summary judgment procedure to predict the outcome of the case (probably correctly) rather than to determine whether the movant has demonstrated that there are no genuine issues of fact. The question whether we would affirm a judgment based upon the record before the trial court is wholly beside the point. A summary judgment is an extreme remedy which should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Weathers* v. *City of Springdale,* 239 Ark. 535, 390 S.W. 2d 125. *Wirges* v. *Hawkins,* 238 Ark. 100, 378 S.W. 646. If there is any doubt whatever as to the existence of issues of fact, summary judgment should be denied. *Trace X Chemical, Inc.* v. *Highland Resources, Inc.,* 265 Ark. 468, 579 S.W. 2d 89. If inconsistent hypotheses may be drawn and reasonable persons might differ, or reach different conclusions, summary judgment should be denied. *Braswell* v. *Gehl,* 263 Ark. 706, 567 S.W. 2d 113; *Betnar* v. *Rose,* 259 Ark. 820, 536 S.W. 2d 719.

The duty of the owner or occupier to a business invitee is not necessarily limited by the owner's property lines. That duty with regard to the unsafe condition of access to the property has been well stated by the textwriter in 65 CJS § 63 (51), at p. 754 et seq, viz:

Any invitation to enter premises carries with it the duty toward the persons invited to provide reasonably safe means of ingress and egress, and where the invitation is to a particular part of the premises there is a duty to maintain the approaches thereto in a reasonably safe condition for use. There is also a duty to provide reasonably safe passages to and from such places as are included within the scope of the invitation.

The invitee, on his part, in order to retain his status

as such, is bound to use the ordinary and customary means of ingress and egress, for an implied invitation will not extend beyond the necessary lines of travel. So, where there is provided a safe entrance to the portion of the premises to which persons are invited, the owner or occupant is not liable for injury due to an unsafe condition of another means of entry which is not provided for or usually used for obtaining access to such place.

An invitee does not lose his status by employing a means of ingress and egress which by allurement or inducement, express or implied, he has been led to employ. A business invitation includes an invitation to use such parts of the premises as the visitor reasonably believes are held upon to him as a means of access to, or egress from, the place where business is to be transacted. The duty to maintain premises in a reasonably safe condition includes and extends to approaches to the premises which are open to invitees in connection with their business on the premises, and which approaches are so located and constituted as to represent an invittion to visit the place of business and use such means of approach. Where an invitee or business visitor has been intentionally or negligently misled into a reasonable belief that a particular passageway or door is an appropriate means of ingress or egress, he is entitled to the protection due an invitee or egress, he is entitled to the protection due an invitee or business visitor while using such passageway or door. The duty of keeping premises in a safe condition extends to ways of ingress of egress which, although not the proper ways, the owner of the premises permits invitees or business visitors to use without taking precautions to prevent such use, \*\*\*

The duty to keep the means of ingress, egress, and passage safe is limited to the exercise or ordinary care to have such places in a reasonably safe condition or to warn the invitee of any dangerous existing condition not obvious to an invitee in the exercise of ordinary care.

In the application of that rule, it has been held that the duty of an occupier of premises extends beyond the premises to the entrances into and exits from such premises and it is his duty

to warn his customers of hidden hazards upon, around or beyond his premises, if he would reasonably expect use of an adjacent area by his customers in connection with the invitation. *Joseph* v. *Jet Air Frieght Corp.,* 479 S.W. 2d 325 (Tex. Civ. App., 1972), writ ref'd. n.r.e. To incur liability to a business invitee, it is not necessary that the owner or occupier own or control the property on which the hazard to safe ingress or egress exists, or that the owner or occupier create the hazard, if the hazard created a foreseeable risk of harm to his business invitees and the owner or occupier knew of its presence and should have taken reasonable precautions to eliminate it (by such measures as posting warnings, or barriers or providing adequate illumination). *Rockefeller* v. *Standard Oil Co.,* 11 Wash. App. 520, 523 P. 2d 1207 (1974).

In viewing the testimony in the light most favorable to appellants, we should not overlook the fact that it was dark when Mrs. Ollar left the automobile and started toward George's Place, and that she had taken only two or three steps when she stumped her toe on the "raggedy" end of a crosstie, stumbled and fell. Apparently the crosstie on which she stumbled lay at an angle to the line of ties (how slightly, I do not know.) Mrs. Ollar said that she did not see the crossties on the night she fell because it was too dark. There are no lights on the lot on which the Ollars parked and the only lights on the premises of George's Place are those provided by two signs. Mrs. Ollar testified that there was no street light. She said she fell on the lot on which George's Place was located but did not know for sure where the lines were. George Spakes testified that he did not have good relations with Mrs. Herrod because she did not want anyone parking on her lot. Mrs. Herrod testified that the ties were originally placed on the property line, but that, because the trucks of George's customers jarred them loose and pushed them one way or the other, they might have been on either the Spakes lot or hers at the time Mrs. Ollar fell.

When I view the evidence submitted in this case, appellees' entitlement to summary judgment is not a matter beyond doubt. It is certainly reasonable to infer that appellees knew that their customers parked on the beauty parlor lot when the lot at George's Place was full, and that it

was at least likely that these customers would enter appellees' premises by the most direct route, i.e., by crossing the line of crossties. The Ollars may have been justified in the belief that this means of ingress to George's Place was open to them. It would be reasonable to infer that they were permitted to do so by appellees. Under these circumstances, appellees had the duty to see that the access to their property was reasonably safe or to warn their customers not to use it or that there was a hazard in crossing the crossties. That appellees knew that the ties were not anchored and that they were sometimes moved from the position in which they had been placed by trucks driven by customers of George's Place would not be an unreasonable inference. For these reasons, I conclude that summary judgment was not proper on the record before us. I do not mean to say that when the case is fully developed that there will necessarily be a question for a jury. I only say that appellees failed to negate potential issues for a jury. I should add that the question of assumption of the risk is, along with the negligence of Mrs. Spakes, a matter of comparative fault. Ark. Stat. Ann. § 27-1763 et seq (Repl. 1979). Such questions usually cannot be resolved on motion for summary judgment. They certainly cannot in this case.